ADAMS CREEK ASSOCIATES, A NORTH CAROLINA LIMITED PARTNERSHIP WITH BILLY DEAN BROWN, GENERAL PARTNER, PLAINTIFF v. MELVIN DAVIS AND LICURTIS REELS, DEFENDANTS

No. COA07-134

(Filed 6 November 2007)

**1. Appeal and Error— preservation of issues—trial judge not ruling on motion—no argument that ruling required**

The issue of whether the trial court erred by refusing to rule on a motion to set aside another judge's order was not preserved for appeal where defendants did not argue that the trial court was required to rule on their motion. If it had been, the trial court did not err by refusing to entertain the motion.

**2. Judges— one judge overruling another—Rule 60 motion**

Although defendants argue that the general rule barring one superior court judge from overruling another does not apply because their motion should be construed as having been brought under Rule 60, defendant's motion was not in fact brought under that section, defendants did not seek to amend the motion, and

———————————

ADAMS CREEK ASSOCS. v. DAVIS

[186 N.C. App. 512 (2007)]

defendants never raised this argument at trial. Moreover, if it was a Rule 60 motion, it was not timely.

## 3. Statutes of Limitation and Repose— limitations—Torrens Act registration

Defendants' motion involving the application of the Torrens Act in a 1979 proceeding was not timely under either the one-year statute of limitations of N.C.G.S. § 43-26 or the three-year statute of limitations of N.C.G.S. § 1-52(9).

## 4. Real Property— Torrens registration—service not properly obtained on one heir—no challenge by that heir

Athough defendants in an action involving a Torrens property registration argued that the decree of registration was not valid because one of the heirs was not properly served, defendant did not cite any cases holding that the failure to notify another party, not the defendants themselves, voids a decree of registration that is not being challenged by the heir who allegedly was not notified. Furthermore, defendants are attempting to raise issues that have already been adjudicated.

## 5. Appeal and Error; Attorneys–appealability— motion to disqualify attorney denied

The trial court's denial of defendants' motion to disqualify plaintiff's attorney was interlocutory and not subject to appeal where only a partial summary judgment had been granted on the underlying action. However, if the issue had been addressed, it is clear that the trial court did not abuse its discretion. The earlier action from which the alleged conflict of interest arose was not relitigated in the hearing giving rise to the orders from which defendants here appealed.

## 6. Contempt— civil and criminal—different acts

Defendants were found in civil and criminal contempt on the basis of different acts: they were found in civil contempt for failing to comply with an earlier order not to trespass, and in criminal contempt for threatening to disobey future orders.

## 7. Contempt— penalties—testimony of intended refusal to obey order

The trial court did not err by imposing penalties for indirect criminal contempt where the defendants testified in the court's presence that they would not obey the orders of the court. This constituted direct contempt; however, the penalty is the same for

both direct and indirect criminal contempt, and defendants were afforded the assistance of counsel and the opportunity to testify and explain why they continued to trespass on the property.

**8. Contempt— refusal to leave property—future arrest and bond**

The trial court did not abuse its discretion in a trespass action where defendants testified that they would not leave the property and the court issued an order that defendants would be taken into custody if they were again found on the property. The court did not impose a sentence or recommit defendants, but provided that they must post a $500 bond before being released from custody if they were again arrested for violating orders to stay off the property.

Appeal by defendants from orders entered 10 August 2006 by Judge Gary E. Trawick in Carteret County Superior Court. Heard in the Court of Appeals 29 August 2007.

*Wheatly, Wheatly, Weeks & Lupton, P.A., by Claud R. Wheatly, III, for plaintiff-appellee.*

*UNC Center for Civil Rights, by Julius L. Chambers and Anita S. Earls, for defendant-appellants.*

*Annette Hiatt for Amicus Curiae Land Loss Prevention Project.*

SMITH, Judge.

Defendants, Melvin Davis and Licurtis Reels, appeal from orders entered in connection with claims for trespass and to remove cloud from title filed by plaintiff, Adams Creek Associates. The subject property, upon which defendants admittedly have entered and lived, consists of some 13 acres of waterfront land in Carteret County, North Carolina. Defendants appeal from orders denying their motions to disqualify plaintiff's attorney and to set aside a 1979 decree of registration for the subject property, and from an order finding them in contempt of court. Defendants also purport to appeal from the trial court's refusal to rule on their motion to set aside an order entered by another Carteret County Superior Court Judge. We affirm.

The relevant history of this action is summarized as follows: In 1911 Elijah Reels bought approximately 65 acres in Carteret County. The record documents do not describe the boundaries of this 65-acre tract by metes and bounds, but instead by reference to local land-

ADAMS CREEK ASSOCS. v. DAVIS

[186 N.C. App. 512 (2007)]

marks such as Adams Creek; "the county road"; and the names of adjoining property owners. In January 1944, this 65-acre tract was sold to Carteret County for back taxes. In February 1944, Elijah's brother, Mitchell Reels ("Mitchell"), bought the 65-acre property by paying the taxes that were owed. Mitchell Reels died intestate in 1971, survived by his wife Pernella Reels and his eleven children or their heirs. In 1976, Mitchell's daughter Gertrude Reels ("Gertrude") filed an action pertaining to the property rights of Mitchell's heirs. The trial court entered judgment in August 1976, ruling that Mitchell's heirs owned: (1) the 65 acres that Mitchell bought in 1944 for back taxes; and (2) another lot comprising 45 acres. This 45-acre tract was also described by reference to local landmarks, including "the Miles Jones lands"; the "lands of Elijah Reels"; "the county road"; and "the Fannie Moore and Wright Sutton properties."

In 1978, Shedrick Reels ("Shedrick") filed a petition under N.C. Gen. Stat. § Chapter 43, also known as the Torrens Law, in which he sought to have the subject property registered in his name, based on a conveyance of the land from Elijah Reels to him. The documents in this record describe the subject property in metes and bounds, unlike the less precise references to adjoining landowners and the "county road" used to describe Mitchell's lots. Accordingly, it is not possible from the record to discern the relative locations of the three tracts (Mitchell's 65-acre and 45-acre tract, and the subject property registered by Shedrick), from their descriptions.

Defendants assert that the subject property is located entirely within Mitchell's 65-acre lot, and that the 1976 judgment proves that Elijah Reels had no interest in the subject property, and thus could not have validly conveyed it to Shedrick Reels. But, the 1976 judgment specifically refers to "the Elijah Reels lands." The question of whether the subject property was originally part of the Elijah or Mitchell Reels lands is not answered in the record, which nowhere attempts to synthesize the disparate styles of description in order to set out the boundaries of the subject property in relation to Mitchell's and Elijah's properties.

In March 1979, attorney Claud R. Wheatly, III, ("Wheatly") signed a certification on behalf of the present defendants or their predecessors in interest, certifying that they had no objections to Shedrick's petition to register the subject property. On 19 March 1979, a decree of registration was filed declaring Shedrick to be the owner of the subject property. The decree further declared "the Heirs of Mitchell Reels, Deceased," to be the owner of two tracts. The two tracts are

set out in a metes and bounds description, the second tract specifically "containing approximately 3.64 acres all as shown on a survey on file in this proceeding of Shedrick Reels by James L. Powell, Surveyor, dated November 28, 1978[.]" Again, the record does not clarify the relationship or overlap, if any, between these two tracts and the 65- and 45-acre Mitchell tracts described in the earlier documents.

On 25 August 1982, Shedrick filed a trespass action against Melvin Davis, defendant in the instant case, and Gertrude Reels, mother of defendant Licurtis Reels. The complaint asserted that plaintiff Shedrick Reels "is the owner of the fee simple estate" of the subject property; that "[d]efendants claim some interest in [the subject property]; and that "defendants have committed and threatened to continue to commit acts of trespass thereon[.]" In an order filed 4 January 1984, Judge Herbert O. Phillips, III granted summary judgment for Shedrick, stating in pertinent part that:

> IT IS THEREFORE ORDERED . . . that summary judgment is granted in favor of plaintiff against the defendant[s] and that the plaintiff is the owner of the lands described in the complaint and that defendants have no right or title to said lands.

> IT IS FURTHER ORDERED, ADJUDGED and DECREED that: 1. The defendants and their agents, servants, and employees shall not enter upon or commit any act of trespass upon the lands described in the complaint. . . .

On 20 September 1985, Judge David E. Reid found Melvin Davis in contempt of Judge Phillips' order, stating in pertinent part:

> . . . Melvin Davis, by his own admission, has been upon the [subject property] on many occasions since the Order of this Court dated November 4, 1983[, and filed 4 January 1984,] ordering him not to do so, that he ordered concrete to be poured for a boat ramp on the property since the order, has caused electric poles to be hooked up on the property to construct the building, and has otherwise committed acts of trespass;

> . . .

> The Court concludes as a matter of law that the defendant is in willful contempt of the order of this Court of November 4, 1983.

> . . . IT IS ORDERED that the defendant is placed . . . in the Carteret County jail until he shall purge himself of contempt by

ADAMS CREEK ASSOCS. v. DAVIS

[186 N.C. App. 512 (2007)]

signing a statement . . . acknowledging that the [subject property] belongs to plaintiff Shedrick Reels, and that he will not go upon the land for any purpose[.]

Pursuant to this order, Davis signed the following statement:

I, Melvin Davis, do hereby acknowledge that the land described in the complaint in this action belongs to the plaintiff Shedrick Reels, and I will not go upon the land for any purpose[.]

Significantly, no appeal was taken from either Judge Phillips' order filed in January 1984 or from Judge Reid's order finding defendant in contempt of Judge Phillips' order. In 1985, Shedrick sold the subject property to buyers, who in turn conveyed the property to plaintiff in 1986.

On 30 October 2002, plaintiff herein filed the instant action against defendants. Plaintiff alleged that defendants continued to claim an interest in and trespass upon the subject property, and sought removal of the cloud on its title and damages for trespass. Defendants answered, denying the material allegations of the complaint and asserting a counterclaim for title to the subject property. Defendant Melvin Davis later filed an additional answer asserting various defenses and seeking dismissal of plaintiff's action. Plaintiff answered the counterclaim and denied its allegations. On 14 May 2004, plaintiff filed a motion for summary judgment. On 16 September 2004, Judge Benjamin G. Alford entered partial summary judgment for plaintiff, in an order finding in pertinent part:

1. The Plaintiff's title in this matter originates as a result of a Chapter 43 ([T]orrens proceeding) which was filed with the Clerk of Superior Court of Carteret County[.] . . . The Petitioner in said action was Shedrick Reels . . . and the Respondents consisted of various individuals one of whom being Gertrude Reels, mother of the Defendants.

2. A decree of registration was entered on or about 16 March 1979 and approved by the resident superior court judge on 19 March 1979 with the decree of registration being recorded in Book 4A, Page 241, Carteret County Registry.

. . .

4. The property in the petition and the description as contained in the publication encompasses the property as set forth in the decree of registration.

5. Pursuant to said decree of registration, Registered Certificate 79-1 was issued to Shedrick Reels describing the property which was set forth in the decree of registration and the same property as described in the complaint of the Plaintiff in this matter.

. . .

7. Shedrick Reels and wife, Beatrice Reels, conveyed to Monroe Johnson and Charles B. Bissette, Jr., d/b/a Adams Creek Development, by deed dated 27 November 1985, recorded in Book 529, Page 399, Carteret County Registry.

8. The said Monroe Johnson and Charles B. Bissette, Jr., d/b/a Adams Creek Development, by deed dated 8 September 1986 conveyed said property to Adams Creek Associates[.]

9. The Court further finds the Shedrick Reels brought an action against Melvin Davis and Gertrude Reels in the Superior Court of Carteret County . . . contending that Melvin Davis and Gertrude Reels were trespassing on the property of the Plaintiff, Shedrick Reels.

10. Order was entered on or about 4 November 1983 finding that Shedrick Reels was the owner of said property and that the defendants, their agents, servants or employees were not to enter upon or commit acts of trespass upon the lands described in the complaint.

11. That on or about September 20, 1985, Superior Court of Carteret County by order signed by The Honorable David E. Reid found that Melvin Davis should be held in contempt [for] violating the court order of November 4, 1983.

12. The Defendant, Melvin Davis, was given the opportunity to purge himself of the contempt by signing a statement drawn by Shedrick Reels' attorney.

13. Melvin Davis executed a statement wherein he acknowledged that the property belonged to Shedrick Reels and that he would not go upon the land for any purpose[.]

14. The Court further finds that Donald B. Pollock, Attorney at Law, filed a motion to set aside a Decree of Registration contending that one of the defendants in the original Chapter 43 proceeding (Torrens Proceeding) did not have proper serv-

ice on Classy Reels Curley. The said motion is dated 28 October 1983 and nothing else appeared to show that she had taken any action involving said motion.

15. Melvin Davis has gone upon the property as described in the complaint in this cause contending that he had gotten a power of attorney from his mother in Classy's name to do what he wanted to do.

16. The Defendants have offered no affidavits from Licurtis Reels . . . nor introduced any further documentation other than the deposition of Melvin Davis.

17. The deed described in the complaint to Licurtis Reels . . . is within the property as described in the decree of registration and the Certificate of Title of Shedrick Reels and . . . constitutes a cloud on the title of the Plaintiff and is a nullity and should be stricken from the records of Carteret County.

18. It appears to the Court there is no genuine issue to any material fact and that the Plaintiff is entitled to a partial summary judgment as a matter of law and is granted summary judgment against the Defendants and the Plaintiff is the owner of the lands described in the complaint and the Defendants have no right or title to said lands.

    IT IS FURTHER ORDERED . . . that the Defendants . . . will not enter upon or commit any act of trespass upon the lands described in said complaint and further, this action shall be tried by a jury on the issues of damages only.

Defendants filed notice of appeal on 13 October 2004, but failed to file a record on appeal or otherwise perfect the appeal, and on 9 March 2005 plaintiff moved to dismiss defendants' appeal. Attached to the motion was a certificate of service certifying that it had been served upon N. Jerome Willingham, defendants' counsel of record, and also upon each defendant. On 28 March 2005, Judge Kenneth F. Crow entered an order dismissing defendants' appeal from Judge Alford's order of 16 September 2004, and finding that:

    . . . [the] Motion to Dismiss the Appeal of the Defendants was . . . served by regular mail, on attorney N. Jerome Willingham, attorney for the two (2) defendants, Melvin Davis and Licurtis Reels. . . . In addition thereto Melvin Davis and Licurtis Reels were served with a copy of said Motion by the sheriff of Carteret

ADAMS CREEK ASSOCS. v. DAVIS

[186 N.C. App. 512 (2007)]

County on March 16, 2005. [Neither] the Defendant[']s attorney nor the Defendants appeared upon the call of this case.

On 6 May 2006, plaintiff filed a Show Cause motion, seeking to have defendants held in contempt of Judge Alford's order of September 2004. The motion asserted that defendants not only continued to trespass on the subject property, but also had not removed any of the buildings or personal property stored there. Plaintiff's motion was granted by Judge Ernest Fullwood on 7 July 2006, in an order directing defendants to appear and show cause why they should not be held in contempt of court.

On 17 May 2006, defendants filed a motion to set aside the dismissal of their appeal, a motion to disqualify Mr. Wheatly from representing plaintiff, and a motion asking the trial court to set aside the 1979 decree of registration for the subject property. On 7 August 2006, the Show Cause order and defendants' motions were brought before Judge Gary E. Trawick. Judge Trawick did not entertain defendants' motion to set aside Judge Crow's dismissal of their appeal, but invited defendants to file a motion for reconsideration with Judge Crow. On 10 August 2006, the court denied defendants' motions to disqualify Mr. Wheatly as plaintiff's counsel and to set aside the original decree of registration. On the same date the court entered an order (1) finding defendants in civil contempt of Judge Alford's 2004 order for continuing to trespass on the subject property; and (2) finding defendants in indirect criminal contempt of court for testifying under oath that they did not intend to obey future orders of the trial court to stay off the subject property. Defendants appealed from the trial court's denial of their motions to disqualify Mr. Wheatly and to set aside the decree of registration, and from the court's order for contempt.

---

[1] We first consider defendants' argument that the trial court erred by refusing to rule on its motion to set aside Judge Crow's dismissal of their appeal from Judge Alford's order of September 2004. We conclude that this issue is not properly before us.

At the hearing, the trial court and defense counsel had the following dialog about this motion:

[JUDGE TRAWICK]:  Now, the court will not consider the motion to set aside the dismissal of the appeal which was signed by Judge Crow. Judge Crow is a local judge and I'm not going to consider another Superior Court Judge's order who is still active, on

the bench and local. So you have to take that up directly with him if you want for that to be reconsidered.

[DEFENSE COUNSEL]: I understand.

Defendants did not object to the trial court's ruling on this issue. Under N.C. R. App. P. 10(b)(1):

> In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion.

N.C. R. App. P. 10(b)(1) (2007). " 'This subsection of [Rule 10] . . . . is directed to matters which occur at trial and upon which the trial court must be given an opportunity to rule in order to preserve the question for appeal. The purpose of the rule is to require a party to call the court's attention to a matter upon which he or she wants a ruling before he or she can assign error to the matter on appeal.' " *Reep v. Beck*, 360 N.C. 34, 37, 619 S.E.2d 497, 499-400 (2005) (quoting *State v. Canady*, 330 N.C. 398, 401, 410 S.E.2d 875, 878 (1991)). Defendants did not argue that the trial court was required to rule on their motion and, thus, did not preserve this issue for appeal pursuant to N.C. R. App. P. 10(b)(1). Accordingly, this issue is not properly before this Court. *Id.*

However, even if the issue had been preserved, we conclude the trial court did not err. "The power of one judge of the superior court is equal to and coordinate with that of another." *Michigan Nat'l Bank v. Hanner*, 268 N.C. 668, 670, 151 S.E.2d 579, 580 (1966). Therefore, it is well established in our jurisprudence "that no appeal lies from one Superior Court judge to another; that one Superior Court judge may not correct another's errors of law; and that ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action." *Calloway v. Ford Motor Co.*, 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972). Thus, the trial court's refusal to entertain defendants' motion to set aside the order of another superior court judge was not error.

[2] Defendants argue that the general rule barring one superior court judge from overruling another does not apply in this case because their motion "is properly construed as having been brought pursuant

to Rule 60(b)(5) or Rule 60(b)(6)." However, Defendants' motion was not brought under N.C. Gen. Stat. § 1A-1, Rule 60; defendants never sought to amend their motion to cite Rule 60; and defendants never raised this argument at the trial level. Furthermore, defendants' motion alleged in relevant part:

1. That on or about March 11, 2005, Judge W. Donald Stephens . . . issued an Order forbidding Jerome Willingham, defendants' attorney at the time, from handling client funds until further order of the court.

2. Mr. Willingham was scheduled for a hearing before the State Bar Grievance Committee on April 22, 2005. He was subsequently disbarred.

3. . . . [C]ounsel for defendants knew or should have known that he was facing disciplinary problems before the State Bar, but never advised his clients of this fact. In fact, defendants did not become aware that they were no longer being represented by Mr. Willingham until they read it in the newspaper. . . .

4. This patent misrepresentation by Jerome Willingham, has caused a substantial hardship to the defendants and we call upon the court to rectify this inequity by setting aside the Order of Dismissal.

We note that defendants' motion states that their attorney was not disbarred until after their appeal was dismissed. Further, a Rule 60 motion "shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken." N.C. Gen. Stat. § 1A-1, Rule 60(b) (2006). Defendants' motion was filed twenty months after entry of Judge Alford's order and almost fourteen months after Judge Crow's dismissal of their appeal, which is neither "within a reasonable time" nor within a year of Judge Crow's order. Accordingly, even if we were to construe defendants' motion as a Rule 60 motion, it was not timely. This argument is overruled.

---

**[3]** We next address defendants' arguments that the trial court erred by granting summary judgment in favor of plaintiff, on the grounds that (1) "the Torrens Act, as applied in these circumstances, is an unconstitutional taking of property without due process" and (2) "one heir was not served with notice of the Torrens Act proceeding." We conclude that neither of these issues is properly before us.

ADAMS CREEK ASSOCS. v. DAVIS

[186 N.C. App. 512 (2007)]

Defendants noticed appeal from Judge Trawick's rulings on a motion to set aside the 1979 decree of registration; a motion to disqualify plaintiff's attorney from representing it; and a show cause order charging defendants with contempt of court. None of these motions were for summary judgment, and Judge Trawick did not grant summary judgment for any party.

Judge Alford did grant partial summary judgment for plaintiff in 2004. However, defendants' appeal from that order was dismissed in 2005 and defendants neither sought review of the dismissal before Judge Crow, nor filed a petition for certiorari. In short, Judge Alford's order remains in effect, is not on appeal, and not subject to our review. Accordingly, the propriety of Judge Alford's order granting partial summary judgment is not before us.

Presumably, defendants meant to argue that the trial court erred by denying their motion to set aside the 1979 decree of registration on the grounds that the application of the Torrens Act to those 1979 proceedings was improper. The trial court, however, denied defendants' motion to set aside the decree on the grounds that the statute of limitations had long expired. We agree.

N.C. Gen. Stat. § 43-26 provides, in part, that:

No decree of registration hereafter entered and no certificate of title hereafter issued pursuant thereto shall be adjudged invalid or revoked or set aside, unless the action or proceeding in which the validity of such decree or of the certificate of title issued pursuant thereto is attacked or called in question be commenced or the defense alleging the invalidity thereof be interposed within 12 months from the date of such decree.

N.C. Gen. Stat. § 43-26 (2006). In the instant case, the decree of registration was entered in 1979, and defendants' motion was not made until 2006, decades after the statute of limitations expired.

Defendants assert baldly that the one-year statute of limitations "does not apply in this case" because "the registration was based on a fraud that the heirs did not discover for several years." Defendants cite no cases holding that this would invalidate the relevant statute of limitations. Further, N.C. Gen. Stat. § 1-52(9) provides that "[f]or relief on the ground of fraud or mistake; the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." N.C. Gen. Stat. § 1- 52(9) (2006). "For purposes of N.C.G.S. § 1-52(9), 'dis-

covery' means either actual discovery or when the fraud should have been discovered in the exercise of 'reasonable diligence under the circumstances.' " *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, — (2007) (quoting *Bennett v. Anson Bank & Trust Co.*, 265 N.C. 148, 154, 143 S.E.2d 312, 317 (1965)). The record shows a defense motion was filed in 1983 seeking to set aside the decree of registration on the grounds of fraud and failure to notify an heir. Thus, defendants were aware of these issues by no later than 1983, yet filed their motion more than 20 years later.

Clearly, the trial court did not err by ruling that the one-year statute of limitations set out in N.C. Gen. Stat. § 43-26 had expired when defendants filed their motion. Further, assuming the existence of "fraud that the heirs did not discover for several years," the three-year statute of limitations for fraud was tolled well more than three years before their 2006 motion was filed. Accordingly, not only was defendants' motion late under the one-year statute of limitations, if we apply the three-year statute of limitations for fraud set out in N.C. Gen. Stat. § 1-52(9), defendants' motion was still filed decades too late.

[4] Defendants also argue that an heir, Classie Reels Curley, was not properly served with notice of the proceeding and, therefore, the trial court should have set aside the 1979 decree of registration. Defendants, however, do not cite any cases holding that the failure to notify another party, not the defendants themselves, voids a decree of registration that is not being challenged by the heir who allegedly was not notified. We further note that by challenging the denial of their motion to set aside the 1979 decree of registration, defendants are attempting to raise issues which have already been adjudicated. By orders filed 4 January 1984, Judge Herbert O. Phillips found that Shedrick was the owner of the subject property, that defendants had no interest in the subject property, and ordered defendants and others not to trespass on the land. By order dated 20 September 1985, Judge David E. Reid found defendant Melvin Davis, who had admitted being on the subject property, in contempt for violating the previous order. Finally, by order dated 14 September 2004, Judge Benjamin G. Alford found that defendants had no right or title to the subject property.

We have concluded that the trial court did not err by ruling that defendants' motion was barred by the statute of limitations. Inasmuch as the trial court denied defendants' motion, it was not called upon to rule on issues arising from the Torrens Act proceedings.

Accordingly, the substantive merits of the 1979 litigation was neither before the trial court nor preserved for appellate review. The pertinent assignments of error are overruled.

---

**[5]** Defendants also argue that the trial court abused its discretion by failing to disqualify Claud R. Wheatly, III, from representing plaintiff in this matter. We disagree.

The North Carolina Supreme Court has held that the denial of a motion to disqualify counsel is an interlocutory order that may not be appealed until entry of a final judgment. *See Travco Hotels v. Piedmont Natural Gas Co.*, 332 N.C. 288, 420 S.E.2d 426 (1992). In *Travco,* the Court reviewed this Court's holding that a trial court's "order denying [defendant's] motion to disqualify [plaintiff's counsel] was not appealable" and held that "the Court of Appeals was correct." *Id.* at 291, 420 S.E.2d at 427-28. The Court explained:

> This Court has consistently found "that no appeal lies to an appellate court from an interlocutory order or ruling of the trial judge unless such ruling or order deprives the appellant of a substantial right which he would lose if the ruling or order is not reviewed before final judgment." "Essentially a two-part test has developed—the right itself must be substantial and the deprivation of that substantial right must potentially work injury . . . if not corrected before appeal from final judgment."

*Id.* at 292, 420 S.E.2d at 428 (internal citations omitted). The Court further noted that "[Defendant] can adequately protect its right not to have its confidences used against it to its detriment by appealing any adverse final judgment." *Id.* at 293, 420 S.E.2d at 428.

In the instant case, the underlying action is plaintiff's 2002 trespass action against defendants. In his 2004 order entered in the trespass case, Judge Alford granted partial summary judgment, reserving the issue of damages for jury trial. The entry of summary judgment was therefore interlocutory and not a final order. We conclude that the trial court's denial of defendants' motion to disqualify Mr. Wheatly from representing plaintiff is not subject to review at this time. Accordingly, this argument is dismissed.

Were we to address this issue on its merits, however, it is clear that the trial court did not err by denying defendants' motion. "Decisions regarding whether to disqualify counsel are within the discretion of the trial judge and, absent an abuse of discretion, a trial

judge's ruling on a motion to disqualify will not be disturbed on appeal." *Travco*, 332 N.C. at 295, 420 S.E.2d at 430.

In the instant case, Mr. Wheatly represented at least one member of the Reels family in 1979, in litigation over the ownership of the subject property. Consequently, if that issue were ever to be reopened in the future, there might exist a conflict of interest between Mr. Wheatly's prior representation of defendants and his present representation of the plaintiff. However, neither the 2002 trespass action nor the motions from which defendants have appealed involved relitigation of this question.

In 1979, plaintiff was declared the owner of the subject property, for which he filed a decree of registration. In 1983, summary judgment was entered on behalf of plaintiff in a trespass action against defendant Melvin Davis, and in 1985 Davis was found in contempt of court for violating the 1983 order. Neither the 1979 decree of registration, the 1983 order, nor the 1985 contempt order were appealed. Thus, the issue of the ownership of the subject property was resolved long before the present plaintiff filed its 2002 trespass action, and was not relitigated in the hearing giving rise to the orders from which defendants appeal.

Defendants argue that it was a conflict of interest for Mr. Wheatly to represent plaintiff when he previously represented one or more members of defendants' family. Defendants contend that Wheatly represented plaintiff "in what is essentially the continuation of a single matter regarding the proper ownership of the Reels family land." However, as discussed above, the issue of "the proper ownership" of the subject property was not relitigated at the trial level, and is not before us on appeal. This assignment of error is overruled.

---

**[6]** Finally, defendants argue that the trial court erred by finding them in both civil and criminal contempt, and by ordering them arrested "without further hearing by the court."

This Court has stated:

A contempt hearing is a non-jury proceeding. "The standard of appellate review for a decision rendered in a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment. Findings of fact are binding on appeal if there is competent evidence to support them, even if

there is evidence to the contrary." "The trial court's conclusions of law drawn from the findings of fact are reviewable de novo."

*State v. Simon*, 185 N.C. App. ——, ——, 648 S.E.2d 853, —— (2007) (internal citations omitted). " 'The standard of review for contempt proceedings is limited to determining whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law.' " *Trivette v. Trivette*, 162 N.C. App. 55, 60, 590 S.E.2d 298, 302-03 (2004) (quoting *Sharpe v. Nobles*, 127 N.C. App. 705, 709, 493 S.E.2d 288, 291 (1997)). N.C. Gen. Stat. § 5A-23 provides in pertinent part that the burden of proof in a civil contempt hearing "shall be on the aggrieved party" and the trial court "is the trier of facts at the show cause hearing." N.C. Gen. Stat. § 5A-23(a1) and (d) (2006).

In the instant case, defendants were charged with contempt of court for their continued trespass on the subject property following the entry of several court orders directing them not to trespass thereon. Both defendants testified in court that they had in fact been living on the subject property or otherwise trespassing on it. On this basis, the trial court found the defendants guilty of civil contempt, for failing to comply with an order of the court. In addition, both defendants testified in court that they intended to return to the subject property, even if that violated a court order, and that they would not follow future court orders directing them to vacate the property. On the basis of this testimony, the trial court found the defendants guilty of indirect criminal contempt.

Defendants argue that they were found in civil and criminal contempt for the same behavior, in violation of N.C. Gen. Stat. § 5A-21(c) and 5A-23(g), which prohibit finding a defendant in both civil and criminal contempt for the same behavior. As discussed above, defendants were found in civil contempt for failing to comply with the court's 2004 order, and were found in criminal contempt for their testimony threatening to disobey future orders of the court. Thus, defendants were found in civil and criminal contempt on the basis of different acts.

[7] Defendants next argue that the trial court erred in imposing indirect criminal penalties. " '[C]riminal [contempt] proceedings are those brought to preserve the power and to vindicate the dignity of the court and to punish for disobedience of its processes or orders.' " *State v. Reaves*, 142 N.C. App. 629, 633, 544 S.E.2d 253, 256 (2001) (quoting *Galyon v. Stutts*, 241 N.C. 120, 123, 84 S.E.2d 822, 825

(1954)). "Direct criminal contempt is 'committed within the sight or hearing of a presiding judicial official[,]' N.C. Gen. Stat. § 5A-13(a)(1) (2005), while indirect criminal contempt 'arises from matters not occurring in or near the presence of the court, but which tend to obstruct or defeat the administration of justice.' " *State v. Simon*, 185 N.C. App. ——, —— 648 S.E.2d 853, —— (2007) (quoting *Atassi v. Atassi*, 122 N.C. App. 356, 361, 470 S.E.2d 59, 62 (1996)).

In the instant case, defendants testified in the trial court's presence, constituting direct criminal contempt. However, the trial court mistakenly held them in indirect criminal contempt:

> The testimony of the Defendants stating that they are not going to obey the orders of the court is disrespectful and disparages the respect due to the court and its orders.

We conclude that this misnomer is not grounds for reversal. The penalty is the same for both direct and indirect criminal contempt. Defendants were afforded the assistance of counsel and the opportunity to testify and explain why they continued to trespass on the subject property. We conclude that the trial court did not err by finding defendants in both civil and criminal contempt.

[8] Defendants also argue that the order finding them in contempt is erroneous in that it provides that if they are again found on the subject property, they "will be taken into custody until the next session of Superior Court to show cause [why] they shall not be held in contempt again." Defendants assert that this order violates N.C. Gen. Stat. § 5A-21(b2), which states that before the Court may recommit a civil contemnor, the defendant is entitled to a *de novo* hearing. In the order *sub judice*, the trial court does not impose a sentence or "recommit" the defendants. Rather, the order provides that, if defendants are again arrested for violation of the several orders directing them to stay off the subject property, they must post a $500 bond before being released from custody. Defendants do not argue that this bond is inappropriate or excessive, and we find it well within the trial court's discretion. This assignment of error is overruled. For the reasons discussed above, we conclude that the trial court did not err and that its orders should be

Affirmed.

Judges McGEE and STEPHENS concur.