MOSS CREEK HOMEOWNERS ASSOCIATION, INC., DELORIS GAIL BENTON, JO ANNE K. BISHOP, JANICE HAMBY, DAVID L. HAMILTON, DAVID J. KNOCHE, AND CHARLES F. PEELER, PLAINTIFFS v. TED L. BISSETTE, MARY HOLLY BISSETTE, SCOTT W. RICH, LAURA K. RICH, AND PROVIDENT FUNDING ASSOCIATES, LIMITED PARTNERSHIP, DEFENDANTS v. TED L. BISSETTE AND MARY HOLLY BISSETTE, SCOTT W. RICH AND LAURA K. RICH, THIRD PARTY PLAINTIFFS v. TERRY MILLER, JIM BENTON, ANGELA PEELER, FRED BISHOP AND PEGGY HAMILTON, THIRD PARTY DEFENDANTS

No. COA08-1156-2

(Filed 2 February 2010)

## 1. Deeds— restrictive covenants—summary judgment

Enforcing a restrictive covenant through summary judgment is proper unless genuine issues of material fact exist showing that the contract is invalid, that the effect of the covenant impairs enjoyment of the estate, or that the term of the covenant is contrary to public interest.

MOSS CREEK HOMEOWNERS ASS'N, INC. v. BISSETTE

[202 N.C. App. 222 (2010)]

**2. Deeds— restrictive covenants—plain language—construed as written**

Summary judgment was properly granted for a homeowners association where a restrictive covenant provided that lots could not be subdivided except by consent and defendants reduced the size of their lot. Although defendants argued that the language of the covenants must be interpreted through definitions in the General Statutes and the county subdivision regulations, a contract must be construed as written where it is plain and unambiguous.

**3. Appeal and Error— preservation of issues—different argument presented below—supporting authority not cited**

Defendants did not properly raise on appeal the question of whether the bankruptcy of the developer and an assignment of rights rendered a covenant unenforceable where a different argument was presented at trial. Moreover, defendants did not cite supporting authority.

**4. Appeal and Error— preservation of issues—argument abandoned—facts not applied to law**

An argument on appeal was deemed abandoned where facts from the record were not applied to the case law cited.

**5. Costs— attorney fees—restrictive covenants—Planned Community Act**

The trial court erred by awarding certain attorney fees in an action arising from a restrictive covenant where the Planned Community Act, which had not been incorporated into the Declaration of Covenants, did not apply.

**6. Appeal and Error— preservation of issues—no legal authority cited—claim not reviewed**

An argument concerning attorney fees was not reviewed on appeal where no legal authority was cited other than the statement that there was no basis for the award.

**7. Costs— attorney fees—contempt—restrictive covenants**

An award of attorney fees in a contempt order arising from a restrictive covenants action was reversed. Courts can award attorney fees in contempt proceedings only when specifically authorized by statute, except in family law claims.

### 8. Fiduciary Relationship— breach—sufficiency of pleadings

The trial court did not err by dismissing a claim for breach of fiduciary duty where the trial court's finding that the pleading was insufficient was not challenged on appeal.

Appeal by Ted and Mary Bissette (as defendants and third-party plaintiffs) from orders entered 3 May 2006 by Judge John O. Craig III, 29 December 2006 by Judge Ronald E. Spivey, 26 March and 12 June 2007 by Judge Steve A. Balog, 30 April 2007 by Judge Edgar B. Gregory, 28 November 2008 by Judge Paul C. Ridgeway, and 12 and 13 February and 4 March 2008 by Judge James M. Webb in Guilford County Superior Court. Heard in the Court of Appeals 21 April 2009. Petition to Rehear allowed on 25 November 2009. This opinion supersedes opinion filed on 20 October 2009.

*Robertson, Medlin & Blocker, PLLC, by John F. Bloss for defendants and third-party plaintiff-appellants.*

*Forman Rossabi Black, P.A., by T. Keith Black and Emily J. Meister; and Gregory A. Wendling, for plaintiffs and third-party defendant-appellees.*

HUNTER, JR., Robert N., Judge.

Ted and Mary Bissette (the "Bissettes") appeal from orders: (1) granting plaintiffs' and third-party defendants' summary judgment motion, (2) dismissing their claim for breach of fiduciary duty, and (3) awarding attorneys' fees for contempt and enforcement of subdivision restrictions. We affirm in part and reverse in part.

### FACTS

Moss Creek is a single-family residential development in Guilford County, North Carolina, developed by Moss Creek Land Development Company, Inc. ("Development Company"). On 18 June 1987, the Moss Creek Homeowners Association, Inc. (the "Association") was incorporated; and following incorporation, Development Company filed a Declaration of Covenants, Conditions, and Restrictions for Moss Creek (the "Declaration") and the Bylaws of Moss Creek Home Owners Association (the "Bylaws") with the Guilford County Register of Deeds.

The Declaration reserves to the Development Company, as "declarant," certain approval rights restricting purchasers of lots from locating buildings on lots, installing well and septic tanks, erect-

ing mailboxes, and altering landscaping on property without the Association's approval. Moreover, the Declaration gives to the Association a first right of refusal to purchase lots and provides the Declarant, the Association or any lot owner the right to sue to enforce the covenants. Section 5 of Article III of the Declaration provides in particular that "[n]o Lot covered by this Declaration may be subdivided by sale or otherwise as to reduce the total area of the Lot as shown on the maps and plats of any Sections of Moss Creek referred to above except by wrtten [sic] consent of the Declarant."

On 30 January 1990, Development Company transferred its rights as "declarant" to Byron Investments, Inc. ("Byron"). Byron filed for bankruptcy protection in 1991, and received its discharge from bankruptcy on 24 August 2005. On 23 December 1993, the Bissettes acquired title to Lot 6 in Moss Creek Development, and subsequently built a house on the lot.

On 5 July 2002, the Bissettes acquired title to the parcel of property adjoining their lot known as Lot 8, and on 10 November 2003, the Bissettes recorded an Instrument of Combination combining the two lots formally. The Bissettes thereafter recorded a plat on 5 December 2003 which (1) split former Lot 8 into two pieces and labeled the new parcels Lot 1 and Lot 2, and (2) recombined Lot 6 and Lot 2 to create a new L-shaped Lot 6 which expanded the backyard of the Bissettes. On 27 January 2004, the Bissettes placed a deed of trust on the combined property of Lot 6 and Lot 2 for $165,500.00 payable to Provident Funding Associates, L.P. ("Provident").

On 21 August 2004, the Association placed the Bissettes on notice that the Association would conduct a hearing on 31 August 2004 to determine whether the Bissettes were in violation of the subdivision covenant in the Declaration. The Bissettes failed to appear at the hearing, and were fined by the Association until such time as the violation was remedied.

Without prior notice to the Association, the Bissettes sold Lot 1 to Scott and Laura Rich (the "Riches") on 28 April 2005. The sale of Lot 1 and the architectural plans of the Riches' home to be constructed thereon were not approved by the Association prior to the beginning of the construction of their house on 2 May 2005.

## PROCEDURAL HISTORY

The Association, Deloris Gail Benton, Jo Anne K. Bishop, Janice Hamby, David L. Hamilton, David J. Knoche, and Charles F. Peeler

(collectively "plaintiffs") filed a complaint for the present action on 18 May 2005. The Bissettes filed an answer, counterclaim, and third-party complaint against Terry Miller, Jim Benton, Angela Peeler, Fred Bishop and Peggy Hamilton (the "board members") on 25 July 2005. The Bissettes filed a motion for summary judgment on 17 November 2005.

Plaintiffs filed their amended complaint on 7 June 2006, and sought declaratory and injunctive relief against the Bissettes and Riches for violating the restrictive covenants. Plaintiffs further asked the trial court to void the deed of trust executed by the Bissettes to Provident.

On 7 July 2006, the Bissettes filed an answer to the amended complaint while renewing their counterclaim and third-party complaint. The Bissettes' amended pleading denied liability as to plaintiffs' amended complaint; affirmatively pled laches, waiver, and estoppel; and sought damages for slander and breach of fiduciary duty against the board members.

Provident filed an answer and cross-claim against the Bissettes on 11 July 2006; and on 17 July 2006, the Association filed a motion for summary judgment on all claims pending against the Bissettes. On 1 August 2006, plaintiffs and the board members (collectively "appellees") filed a Rule 12 motion to dismiss, motion for judgment on the pleadings, motion for more definite statement, motion to strike, and motion for Rule 41 sanctions including involuntary dismissal against the Bissettes.

On 29 December 2006, Judge Ronald E. Spivey entered an order granting summary judgment to appellees: (1) denying the Bissettes' summary judgment motion; (2) finding that the Bissettes had violated the restrictive covenants; and (3) denying all the Bissettes' defenses "including but not limited to[:]"

> laches, waiver, estoppel, improper election of [the Associa-tion's board of directors,] that Defendant Mary Holly Bissette and/or [Byron] constitute the Declarant [in the Declaration], and approval/ratification of [the Bissettes'] actions by any person or entity.

The order further provided that the Bissettes pay: $16,290.00 in fines to the Association, $6,673.66 in costs of the action, and $60,026.07 in "partial" attorney fees to plaintiffs.

Judge Spivey entered a simultaneous second order with regard to appellees' motions under Rules 12 and 41 of the North Carolina Rules of Civil Procedure, and awarded appellees an additional $11,656.25 in attorneys' fees and $240.79 in costs to be paid by the Bissettes within 45 days. The second order also denied appellees' requested Rule 41 motion, granted appellees' motion for a more definite statement on the issue of breach of fiduciary duty, and directed the Bissettes to file a more definite statement no later than 30 days from 29 December 2006.

On 29 January 2007, the Bissettes filed a more definite statement. On 14 February 2007, appellees renewed their Rules 12 and 41 motions to dismiss, and moved further for sanctions contending that the Bissettes had failed to comply with Judge Spivey's prior orders. On 15 February 2007, plaintiffs filed a show cause motion for contempt claiming that the Bissettes had failed to timely pay the costs awarded in the first 29 December 2006 order. On 7 March 2007, appellees filed a show cause motion on the Bissettes' failure to pay the costs assessed in the second 29 December 2006 order.

Contempt hearings were held on 6 and 30 March 2007, and Judge Steve A. Balog found the Bissettes in willful contempt. Despite multiple opportunities to purge themselves of contempt, the Bissettes failed to do so, additional legal fees were awarded, and Mary Holly Bissette was briefly incarcerated.

On 17 January 2008, the Bissettes moved for summary judgment arguing that the Declaration should be rescinded or reformed. Judge James M. Webb denied their motion on 4 March 2008, and granted plaintiffs' motion for summary judgment on "any remaining claims not previously adjudicated." Notice of appeal was properly given, and this Court has jurisdiction to hear the matter. N.C. Gen. Stat. § 1-279.1 (2007).

## STANDARD OF REVIEW

The standard of review on a summary judgment motion is whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Oliver v. Roberts*, 49 N.C. App. 311, 314, 271 S.E.2d 399, 401 (1980), *cert. denied*, 276 S.E.2d 283 (1981); *Barbour v. Little*, 37 N.C. App. 686, 692, 247 S.E.2d 252, 256, *disc. review denied*, 295 N.C. 733, 248 S.E.2d 862 (1978). "In ruling on the motion, the court must consider the evidence in the light most favorable to the nonmovant, who is entitled to

the benefit of all favorable inferences which may reasonably be drawn from the facts proffered." *Averitt v. Rozier*, 119 N.C. App. 216, 218, 458 S.E.2d 26, 28 (1995). Summary judgment may be properly shown by a party: " '(1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense.' " *Kinesis Adver., Inc. v. Hill*, 187 N.C. App. 1, 10, 652 S.E.2d 284, 292 (2007) (quoting *Draughon v. Harnett County Bd. of Educ.*, 158 N.C. App. 705, 708, 582 S.E.2d 343, 345 (2003)), *appeal dismissed, disc. review denied*, 362 N.C. 177, 658 S.E.2d 485 (2008).

## DISCUSSION

[1] In reviewing litigation involving restrictive covenants, this Court has held that restrictive covenants are contractual in nature, and that acceptance of a valid deed incorporating covenants implies the existence of a valid contract with binding restrictions. *See Rodgerson v. Davis*, 27 N.C. App. 173, 178, 218 S.E.2d 471, 475, *disc. review denied*, 288 N.C. 731, 220 S.E.2d 351 (1975). Restrictive covenants, "clearly and narrowly drawn," are recognized as a valid tool for achieving a common development scheme. *Hobby & Son v. Family Homes*, 302 N.C. 64, 71, 274 S.E.2d 174, 179 (1981). Parties to a restrictive covenant may use almost any means they see fit to develop and enforce the restrictions contained therein. *Wise v. Harrington Grove Cmty. Ass'n*, 357 N.C. 396, 401, 584 S.E.2d 731, 735, *reh'g denied*, 357 N.C. 582, 588 S.E.2d 891 (2003). Restrictive covenants are to be strictly construed and "all ambiguities will be resolved in favor of the unrestrained use of land." *Hobby & Son*, 302 N.C. at 70, 274 S.E.2d at 179. Nonetheless, a restrictive covenant "must be reasonably construed to give effect to the intention of the parties, and the rule of strict construction may not be used to defeat the plain and obvious purposes of a restriction." *Black Horse Run Ppty. Owners Assoc. v. Kaleel*, 88 N.C. App. 83, 85, 362 S.E.2d 619, 621 (1987), *cert. denied*, 321 N.C. 742, 366 S.E.2d 856 (1988). Therefore, enforcing a restrictive covenant through summary judgment is proper unless genuine issues of material fact exist showing either: (1) the contract is invalid; (2) the effect of the covenant "impair[s] enjoyment of the estate"; or (3) a term of the covenants "is contrary to the public interest." *Page v. Bald Head Ass'n*, 170 N.C. App. 151, 155, 611 S.E.2d 463, 466, *disc. review denied*, 359 N.C. 635, 616 S.E.2d 542, *disc. review denied*, 359 N.C. 852 (2005).

*Summary Judgment*

On appeal, the Bissettes first contend that the trial court erred in awarding summary judgment because there existed material issues of fact sufficient to show that: (1) the restrictions in the Declaration are sufficiently ambiguous to require jury interpretation; (2) the bankruptcy of Byron rendered the restrictions unenforceable; and (3) the forecast of evidence of their affirmative defenses raised sufficient factual issues to overcome summary judgment. We disagree.

**[2]** As to the Bissettes' first argument, the restrictive covenant at issue in this case provides:

> No Lot covered by this Declaration may be subdivided by sale or otherwise as to reduce the total area of the Lot as shown on the maps and plats of any Sections of Moss Creek referred to above except by wrtten [sic] consent of the Declarant.

Section 12 of Article I of the Declaration defines "Lot" as "a portion of the Properties other than the Common Area intended for any type of independent ownership and use as may be set out in this Declaration and as shall be shown on the plats of survey filed with this Declaration or amendments thereto."

The Bissettes attempt to create ambiguity by contending that the obvious language of these terms must be interpreted through definitions contained in North Carolina's General Statutes and Guilford County's subdivision regulations.[1] However, this Court has consistently stated that " '[w]here the language of a contract is plain and unambiguous . . . [a] court may not ignore or delete any of its provisions, nor insert words into it, *but must construe the contract as written*[.]' " *Hemric v. Groce*, 169 N.C. App. 69, 76, 609 S.E.2d 276, 282 (citation omitted) (emphasis added), *cert. denied and disc. review dismissed*, 359 N.C. 631, 616 S.E.2d 234 (2005).

The Instrument of Combination filed in the Register of Deeds on 10 November 2003 by the Bissettes undisputedly reduced the size of Lot 8 from 2.352 acres of land to 1.211 acres of land. As such, this action clearly "reduce[d] the total area of [Lot 8] as shown on the maps and plats" incorporated in the Declaration. This assignment of error is overruled.

**[3]** The Bissettes next argue that the assignment of rights of the Declaration and the subsequent bankruptcy of Byron renders the

---

1. The Bissettes cite N.C. Gen. Stat. §§ 153A-335, 160A-376 (2007) and Guilford County, NC, Dev. Ordinance § 2-1.7 (2009).

covenant unenforceable. This argument is not properly before this Court and is otherwise without merit.

"This Court has long held that issues and theories of a case not raised below will not be considered on appeal[.]" *Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjust.*, 354 N.C. 298, 309, 554 S.E.2d 634, 641 (2001) (citing *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934) (where theory argued on appeal was not raised before the trial court, "the law does not permit parties to swap horses between courts in order to get a better mount" before an appellate court)).

Here, the Bissettes introduced evidence at trial showing that the original declarant assigned its interest in Moss Creek to Byron on 30 January 1990, and that Byron exited bankruptcy on 24 August 2005. The Bissettes then claimed in their amended July 2006 answer that Byron quitclaimed its interest in Moss Creek to themselves personally, and that Byron had approved their recombination deed.[2] This maneuver, whatever legal effect it might have had on the common stock of the bankruptcy, did not answer the issue of how the assets (including the realty interests of Byron) were allocated in bankruptcy and whether these interests remained with Byron afterward. More importantly for our review, the Bissettes' argument that the recombination was ratified or approved is not the argument raised here, which is whether the bankruptcy of Byron voided the restrictive covenants.

Yet, even if this issue is properly before this Court, the Bissettes fail to cite any authority which supports their contention. The Bissettes cite *DeLaney v. Hart*, 198 N.C. 96, 150 S.E. 702 (1929) for the proposition that the bankruptcy of a declarant holding the ability to enforce deed restrictions will prohibit their future enforcement. However, *DeLaney* is factually distinct from this case, because in that case the Court found there was no general plan of development and that the covenants could therefore be enforced by no one. *DeLaney*, 198 N.C. at 97, 150 S.E. at 703. Here, there is clearly an extensive development plan bolstered by restrictive covenants, and the Bissettes' argument is without merit. This assignment of error is overruled.

---

2. The amended answer does not include the alleged approval by Byron in its exhibits. However, the record shows that Herbert B. Parks purported to assign Byron's interest in the Declaration on 13 October 2005, and that Mary Bissette approved the recombination on behalf of Byron on 1 November 2005.

**[4]** Lastly, the Bissettes argue that even if the restrictive covenants were violated, their affirmative defenses of waiver, estoppel, and laches present issues of fact which preclude summary judgment. We disagree.

The Bissettes cite case law holding that: landowners in violation of restrictive covenants may not themselves enforce such covenants in equity;[3] waiver, estoppel, or laches may provide a defense to the enforcement of a covenant unless the covenant is no longer valid;[4] and no North Carolina superior court judge may overrule another.[5] However, the Bissettes apply no facts from the record to the case law cited. Accordingly, this argument is deemed abandoned. N.C. R. App. P. 28(b)(6) (2009).

*Fines, Costs, and Attorneys' Fees*

**[5]** The Bissettes next argue that: (1) there was no violation of the restrictive covenants upon which to base the award of attorneys' fees, fines, and costs; and (2) no statutory bases exist to award attorneys' fees in this case. As previously discussed, the Bissettes' first contention has no merit; however, we reverse in part based on the second.

The first order filed by Judge Spivey on 29 December 2006 imposed attorneys' fees of $60,016.07 "stemming from [the Bissettes'] violations of the restrictive covenants." In his second order, Judge Spivey awarded $11,656.25 in attorneys' fees as sanctions in response to appellees' motion to dismiss under Rules 12 and 41 of the North Carolina Rules of Civil Procedure. On 12 June 2007, Judge Balog ordered the Bissettes to pay $10,000 to plaintiffs for legal fees incurred by them in the contempt proceedings. On 3 March 2006, Judge Webb ordered the Bissettes to pay $80,563.15 in legal fees stemming from defendants' violations of the restrictive covenants. None of the orders awarding fees cite the statutory authority upon which they are based.

With regard to the awards of 29 December 2006 of $60,026.07 and 3 March 2006 of $80,563.13, our Supreme Court has held that a prevailing party may not recover attorneys' fees "[e]ven in the face of a

---

3. *Rodgerson*, 27 N.C. App. 173, 218 S.E.2d 471.

4. *Medearis v. Trustees of Meyers Park Baptist Church*, 148 N.C. App. 1, 558 S.E.2d 199 (2001), *disc. review denied*, 355 N.C. 493, 563 S.E.2d 190 (2002).

5. *Adams Creek Assocs. v. Davis*, 186 N.C. App. 512, 652 S.E.2d 677 (2007), *disc. review denied*, 362 N.C. 354, 662 S.E.2d 900 (2008).

carefully drafted contractual provision indemnifying a party for such attorneys' fees . . . *absent statutory authority therefor." Enterprises, Inc. v. Equipment Co.*, 300 N.C. 286, 289, 266 S.E.2d 812, 814-15 (1980) (emphasis added). While appellees correctly contend that N.C. Gen. Stat. § 47F-1-101, *et seq.*, otherwise known as North Carolina's Planned Community Act ("PCA"), now provides a basis for an award of attorneys' fees, the PCA does not justify the trial court's order in this case.

In *McGinnis Point Owners Ass'n v. Joyner*, 135 N.C. App. 752, 522 S.E.2d 317 (1999), this Court noted that N.C. Gen. Stat. § 47F-3-120 authorizes the recovery of attorneys' fees in an action to enforce restrictive covenants brought pursuant to Chapter 47F. *McGinnis Point Owners*, 135 N.C. App. at 757, 522 S.E.2d at 321. At that time, N.C. Gen. Stat. § 47F-3-120 did not apply to planned communities created prior to February 1999 unless a community's declaration of covenants was amended to specifically incorporate Chapter 47. *Id.*

In 2005, several revisions were made to Chapter 47F, and N.C. Gen. Stat. § 47F-1-102 (2007) was revised to make N.C. Gen. Stat. § 47F-3-120 applicable "to all planned communities created in this State on or after January 1, 1999[.]" N.C. Gen. Stat. § 47F-1-102(a); 2005 N.C. Sess. Laws ch. 214, § 1. This revision made section 47F-3-120 effective as to all claims commenced on or after 20 July 2005. 2005 N.C. Sess. Laws ch. 214, § 2.

In this case, Moss Creek was created in 1987, and the record does not show that the Declaration in this case has been amended to incorporate revised Chapter 47. Moreover, the Association commenced this action on 18 May 2005,[6] and thus the PCA's provisions allowing attorneys' fees in actions to enforce the restrictive covenants do not apply in the absence of an express incorporation of Chapter 47F in the Declaration. As a result, the PCA provides no statutory basis for an award of attorneys' fees to plaintiffs. We therefore reverse Judge Spivey's 29 December 2006 award of $60,026.07 in attorneys' fees and Judge Webb's 3 March 2006 award of $80,563.13 in attorneys' fees.

**[6]** In awarding $11,656.25 in attorneys' fees in his second order, the record shows that Judge Spivey was considering the award of attorneys' fees as he was ruling on appellees' motion to dismiss the

---

6. Plaintiffs' argument that the date of their amended complaint should be the date by which our Court measures the date the action commenced has no statutory basis. *See* N.C. Gen. Stat. § 1A-1, Rule 15(c) (2007).

Bissettes' various counterclaims and defenses under Rules 12 and 41 of the North Carolina Rules of Civil Procedure. This included a ruling as to punitive damages.

N.C. Gen. Stat. § 1D-45 (2007) provides:

> The court shall award reasonable attorneys' fees, resulting from the defense against the punitive damages claim, against a claimant who files a claim for punitive damages that the claimant knows or should have known to be frivolous or malicious. The court shall award reasonable attorney fees against a defendant who asserts a defense in a punitive damages claim that the defendant knows or should have known to be frivolous or malicious.

*Id.* Therefore, since the trial court dismissed the Bissettes' punitive damages claim under Rule 12, N.C. Gen. Stat. § 1D-45 supports this award of attorneys' fees.

In their brief, the Bissettes make no argument regarding this award of fees other than stating that "there is simply no basis under any statute or Rule of Civil Procedure for such an award." Under our appellate rules, it is the duty of appellate counsel to provide sufficient legal authority to this Court, and failure to do so will result in dismissal. N.C. R. App. P. 28(b)(6). Thus, because the Bissettes have failed to cite any legal authority whatsoever in support of their argument as to these attorneys' fees, we conclude this issue does not warrant appellate review. *Pritchett & Burch, PLLC v. Boyd,* 169 N.C. App. 118, 123, 609 S.E.2d 439, 443 (assignment of error abandoned for failure to cite authority in support of argument), *disc. review dismissed,* 359 N.C. 635, 616 S.E.2d 543 (2005); *Hatcher v. Harrah's N.C. Casino Co., LLC,* 169 N.C. App. 151, 159, 610 S.E.2d 210, 214-15 (2005).

[7] The Bissettes lastly challenge the award of attorneys' fees under Judge Balog's 12 June 2007 order for contempt in failing to pay fees and costs in Judge Spivey's prior orders. As a general rule, "[a] North Carolina court has no authority to award damages to a private party in a contempt proceeding[,]" because "[c]ontempt is a wrong against the state, and moneys collected . . . go to the state alone." *Glesner v. Dembrosky,* 73 N.C. App. 594, 599, 327 S.E.2d 60, 63 (1985). Courts can award attorneys' fees in contempt matters only when specifically authorized by statute. *Blevins v. Welch,* 137 N.C. App. 98, 103, 527 S.E.2d 667, 671 (2000). However, this Court has acknowledged certain exceptions to this general rule such as child support and equitable

distribution actions. *Blair v. Blair*, 8 N.C. App. 61, 173 S.E.2d 513 (1970) (awarding attorneys' fees in a contempt action to enforce child support); *Hartsell v. Hartsell*, 99 N.C. App. 380, 393 S.E.2d 570 (1990) (awarding attorneys' fees in a contempt action to enforce equitable distribution award), *aff'd*, 328 N.C. 729, 403 S.E.2d 307 (1991).

Appellees' current action did not arise in either of these contexts; and the cases cited by appellees[7] in defense of the fee award support our case law that outside of the family law field, statutory authority is required for enforcement of contempt. Therefore, we reverse the $10,000 award in attorneys' fees to appellees incurred by enforcing the trial court's contempt orders.

### Breach of Fiduciary Duty Claim

**[8]** The Bissettes finally argue that the trial court erred in dismissing their claim for breach of fiduciary duty because they substantially complied in providing a more definite statement of their claim.

The trial court granted summary judgment to appellees on the Bissettes' breach of fiduciary duty claim on 8 March 2007. In its order, the trial court found

> that the allegations set forth within the pleading at issue *were not sufficient to show a right to relief*, do not provide the specificity and detail required[,] nor provide compliance with the previously entered Order of [Judge Spivey.]

(Emphasis added.) The Bissettes here do not challenge the trial court's finding that their pleading was insufficient "to show a right to relief." Accordingly, this finding is binding on review in this Court. *Okwara v. Dillard Dep't Stores, Inc.*, 136 N.C. App. 587, 591, 525 S.E.2d 481, 484 (2000) ("Where findings of fact are challenged on appeal, each contested finding of fact must be separately assigned as error, and the failure to do so results in a waiver of the right to challenge the sufficiency of the evidence to support the finding."). This assignment of error is overruled.

Based on the foregoing, we reverse the trial court's award of $60,026.07 and $80,563.15 in attorneys' fees stemming from the violations of the restrictive covenants, reverse the award of $10,000.00 for

---

7. *Watson v. Watson*, 187 N.C. App. 55, 652 S.E.2d 310 (2007), *disc. review denied*, 362 N.C. 373, 662 S.E.2d 551 (2008); *Baxley v. Jackson*, 179 N.C. App. 635, 634 S.E.2d 905, *disc. review denied*, 360 N.C. 644, 638 S.E.2d 462 (2006).

attorneys' fees enforcing the trial court's contempt orders, and otherwise affirm the orders of the trial court.

Affirmed in part and reversed in part.

Judges WYNN and JACKSON concur.