# COURT OF APPEALS

OF

## NORTH CAROLINA

AT

## RALEIGH

TED L. BISSETTE AND WIFE, MARY HOLLY BISSETTE,
INDIVIDUALLY AND AS CETUIS QUE TRUST, PLAINTIFFS
v.
JENNIFER T. HARROD; BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD,
LLP, A NORTH CAROLINA LIMITED LIABILITY PARTNERSHIP; ALL INDIVIDUALLY AND AS TRUSTEES, AND
SCOTT W. RICH AND WIFE, LAURA K. RICH, DEFENDANTS

No. COA12-921

Filed 19 March 2013

1. **Appeal and Error—appellate jurisdiction—attorney fees and sanctions—retained by trial court**

    The trial court's decision to retain jurisdiction after granting defendants' N.C.G.S. § 1A-1, Rule 12(b)(6) motion for dismissal in order to entertain motions for attorney fees or other sanctions did not deprive the Court of Appeals of the authority to address the issues raised by plaintiffs' appeal. A claim for attorney fees pursuant to N.C.G.S. § 6-21.5 is not part of a plaintiff's underlying substantive claim, and neither the dismissal of a case nor the filing of an appeal deprives the trial court of jurisdiction to hear Rule 11 motions.

2. **Appeal and Error—appealability—core of controversy—debated below**

    The question of whether plaintiffs' complaint stated a claim for breach of an express trust was properly before the Court of Appeals on an appeal from a N.C.G.S. § 1A-1, Rule 12(b)(6) dismissal where the trial court expressly allowed the issue to be debated and the issue appeared to be at the core of the controversy.

1

3. **Trusts—res—not transferred**

The trial court did not err by dismissing plaintiffs' complaint for failure to state a claim for relief for breach of an express trust involving real estate. Defendants had no authority to transfer, and did not transfer, the *res* of the alleged trust at the time that the express trust in question was allegedly created. Any claims that plaintiffs were entitled to assert in reliance on the agreement in question were limited to breach of contract, but the statute of limitations on those claims had expired by the time their complaint was filed.

4. **Trusts—resulting or constructive—no fraud or wrongdoing**

The trial court did not err by dismissing plaintiffs' request for the imposition of a constructive or resulting trust entitling them to an easement in an action arising from the division of a lot within a subdivision without the homeowners associations' approval. Plaintiffs' factual allegations did not suffice to establish that defendants obtained possession of the property as the result of any fraud, wrongdoing, or other circumstance that might support the imposition of a constructive or resulting trust.

Appeal by plaintiffs from order entered 11 May 2012 by Judge Richard L. Doughton in Guilford County Superior Court. Heard in the Court of Appeals 10 December 2012.

*Kenneth T. Davies for Plaintiffs.*

*Tuggle Duggins & Meschan P.A., by Robert C. Cone and Brandy L. Mills, for Defendants.*

ERVIN, Judge.

Plaintiffs Ted L. Bissette and Mary Holly Bissette appeal from an order dismissing the complaint that they filed against Defendants Scott W. Rich and Laura K. Rich[1] for failure to state a claim upon which relief could be granted. On appeal, Plaintiffs contend that the trial court erroneously dismissed their complaint on the grounds that they had adequately pled claims sounding in breach of an express trust and for the imposition of a constructive or resulting trust which claims were

---

1. Plaintiffs originally asserted claims against Jennifer T. Harrod and Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, as well. On 10 May 2012, Plaintiffs voluntarily dismissed their claims against Ms. Harrod and Brooks, Pierce with prejudice. As a result, all references to "Defendants" in this opinion should be understood as referring to Scott W. Rich and Laura K. Rich.

not barred by the applicable statute of limitations. After careful consideration of Plaintiff's challenges to the trial court's order in light of the record and the applicable law, we conclude that the trial court's order should be affirmed.

## I. Factual Background

### A. Substantive Facts

Moss Creek is a single-family residential development located in Guilford County. In 1987, the Moss Creek Homeowners Association filed a Declaration of Covenants, Conditions, and Restrictions which provided, in pertinent part, that no lot in the development "may be subdivided by sale or otherwise [so] as to reduce the total area of the Lot" except by written consent of the Association. *Moss Creek Homeowners Ass'n, Inc., v. Bissette*, 202 N.C. App. 222, 225, 689 S.E.2d 180, 183, *disc. review denied*, 364 N.C. 242, 698 S.E.2d 402 (2010) (*Moss Creek I*). As we noted in our opinion in *Moss Creek I*:

> On 23 December 1993, the Bissettes acquired title to Lot 6 in Moss Creek Development, and subsequently built a house on the lot.
>
> On 5 July 2002, the Bissettes acquired title to the parcel of property adjoining their lot known as Lot 8, and on 10 November 2003, the Bissettes recorded an Instrument of Combination combining the two lots formally. The Bissettes thereafter recorded a plat on 5 December 2003 which (1) split former Lot 8 into two pieces and labeled the new parcels Lot 1 and Lot 2, and (2) recombined Lot 6 and Lot 2 to create a new L-shaped Lot 6 which expanded the backyard of the Bissettes. . . . [T]he Bissettes sold Lot 1 to Scott and Laura Rich (the "Riches") on 28 April 2005. . . .

*Moss Creek I*, 202 N.C. App at 225, 689 S.E.2d at 183. In other words, Plaintiffs originally owned Lot 6; however, after purchasing the adjoining lot, identified as Lot 8, they combined Lot 6 with part of Lot 8 before selling Defendants the remainder of Lot 8. Plaintiffs memorialized these transactions in documents titled Instrument of Combination and Exclusion Map.

On 18 May 2005, the Association and various individual Association members (the *Moss Creek I* plaintiffs) filed a complaint against Plaintiffs and Defendants in which they alleged that the transactions described above violated the restrictive covenant provision barring the subdivision

of individual lots in Moss Creek. *Moss Creek I*, 202 N.C. App at 225-26, 689 S.E.2d at 183. Subsequently, Defendants asserted a cross-claim against Plaintiffs for breach of warranty. On 6 September 2005, the parties to this case executed an agreement which provided, in pertinent part, that:

> . . . If for any reason . . . the actions reflected in the Instrument of Combination and the Exclusion Map are required to be reversed, then the Richs agree to record the Deed of Easement attached hereto as Exhibit A. The Richs agree to sign the Deed of Easement at the same time as this Agreement. The signed Deed of Easement will be held by [the Riches'] attorney, Jennifer T. Harrod, to be recorded with the Guilford County Register of Deeds if and only if the actions reflected in the Instrument of Combination and the Exclusion Map are required to be reversed, and as a result thereof, the Rich's acquire title to the aforesaid Tract II. It is expressly agreed and understood by the Parties that the Richs' actions in signing the Deed of Easement and giving it to their attorney does not constitute delivery of the Deed of Easement to the Bissettes, and that such Deed of Easement shall not become effective and enforceable unless and until the Deed of Easement is recorded with the Guilford County Register of Deeds.

On 21 December 2005, Defendants entered into a consent judgment with the *Moss Creek I* plaintiffs under which the *Moss Creek I* plaintiffs dismissed their claim against Defendants and in which the deed between Plaintiffs and Defendants was declared to be valid and to convey title to the property transferred from Plaintiffs to Defendants in fee simple absolute.

On 7 June 2006, the *Moss Creek I* plaintiffs "filed [an] amended complaint . . . [seeking] declaratory and injunctive relief against [Plaintiffs] . . . for violating the restrictive covenants." *Moss Creek I* at 226, 689 S.E.2d at 183.[2] On 29 December 2006, Judge Ronald E. Spivey entered an order determining that Plaintiffs had violated the restrictive covenants and that none of their defenses had merit. *Id.* On 12 February 2008, Judge James M. Webb entered an order declaring, in pertinent

---

2. Although the Riches were named as defendants in the amended complaint, the complaint expressly incorporates the consent agreement and acknowledges that the *Moss Creek I* plaintiffs' claims against the Riches had been resolved.

part, that the Instrument of Combination and the Exclusion Map, were "null and void" and directing that the "General Warranty Deed executed by [Plaintiffs] to [Defendants] . . . [be] reformed to include all of Lot 8 . . . to be effective April 28, 2005[.]" As a result, Judge Webb's order awarded Defendants ownership of Lot 8 in its entirety, including the portion that Plaintiffs had added to their lot and that was designated "Tract II" in the September 2005 agreement. On 4 March 2008, Judge Webb entered another order granting summary judgment in favor of the *Moss Creek I* plaintiffs with respect to "any remaining claims not previously resolved or adjudicated." *Id.*

Plaintiffs noted an appeal to this Court from various orders that had been entered during the course of the *Moss Creek I* litigation. On 2 February 2010, this Court filed an opinion in *Moss Creek I* affirming the orders invalidating the Instrument of Combination and Exclusion Map and vesting title in the entirety of Lot 8 in Defendants while overturning certain orders requiring Defendants to pay attorneys' fees to the *Moss Creek I* plaintiffs.

### B.  Procedural History

On 29 December 2011, more than three years and ten months after Judge Webb ordered that the deed from Plaintiffs to Defendants be reformed in such a manner as to vest title to the original Lot 8 in Defendants, Plaintiffs filed a complaint seeking relief based upon Defendants' refusal to grant Plaintiffs an easement as specified in the 6 September 2005 agreement. In their complaint, Plaintiffs asserted claims sounding in breach of fiduciary duty, constructive fraud, and breach of contract and sought the entry of an order requiring specific performance of the 6 September 2005 agreement. On 4 April 2012, Plaintiffs voluntarily dismissed their complaint against Defendants pursuant to N.C. Gen. Stat. § 1A-1, Rule 41. On 10 April 2012, Plaintiffs filed another complaint against Defendants in which they asserted claims sounding in breach of express trust, constructive fraud, and breach of fiduciary duty and sought the imposition of a resulting or constructive trust on the portion of Defendants' property that would have been subject to an easement in favor of Plaintiffs pursuant to the 6 September 2005 agreement. On 18 April 2012, Defendants filed a motion seeking dismissal of Plaintiffs' complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) on the grounds that Plaintiffs' claims were barred by the three year statute of limitations applicable to actions arising from contract claims and asserting, in pertinent part, that:

1. This action is barred by North Carolina's three-year statute of limitations, N.C. Gen. Stat. §§ 1-15 and 1-52. . . . [F]inal Orders entered by Judge Webb . . . on February 12 and March 4, 2008 . . . reversed the actions of [Plaintiffs] reflected in the "Instrument of Combination" and the "Exclusion Map" . . . and conveyed title to [Defendants] of the property referred to in the so-called Deed of Easement. . . .

2. . . . [Plaintiffs] could have entered suit on February 12, 2008. On that date the disputed property was transferred to [Defendants]. The transfer was not stayed or held in abeyance. The rights of [Plaintiffs], if any, under the subject agreement, became actionable on February 12, 2008. This action was not deemed commenced until December 29, 2011[.] . . .

3. The subject contract cannot be enforced due to the running of the statute of limitations, because more than three years' time has elapsed since accrual of [P]laintiffs' right, if any, to sue for enforcement of the subject contract. . . .

A hearing was held with respect to Defendants' dismissal motion on 7 May 2012. During the course of this hearing, Plaintiffs expressly abandoned their constructive fraud and breach of fiduciary duty claims and indicated that they were only pursuing their claims for breach of express trust or the imposition of a constructive or resulting trust. On 11 May 2012, the trial court entered an order dismissing Plaintiffs' complaint for failure to state a claim upon which relief can be granted.[3] Plaintiffs noted an appeal to this Court from the trial court's order.

---

[1] 3. In its order, the trial court stated that "jurisdiction of this matter is retained for purposes of (a) taxing costs, (b) entertaining motions for costs (including claims for attorneys' fees), and (c) motions for sanctions under Rule 11 of the North Carolina Rules of Civil Procedure." However, given that a claim for attorney's fees pursuant to N.C. Gen. Stat. § 6-21.5 is not part of a plaintiff's "underlying substantive claim," *Bumpers v. Cmty. Bank of N. Va.*, 364 N.C. 195, 200, 695 S.E.2d 442, 446 (2010), and that "neither the dismissal of a case nor the filing of an appeal deprives the trial court of jurisdiction to hear Rule 11 motions," *Dodd v. Steele*, 114 N.C. App. 632, 634, 442 S.E.2d 363, 365 (citing *Bryson v. Sullivan*, 330 N.C. 644, 653, 412 S.E.2d 327, 331 (1992)), *disc. rev. denied*, 337 N.C. 691, 448 S.E.2d 521 (1994), the trial court's decision to retain jurisdiction for the purpose of entertaining motions for attorneys' fees or other sanctions does not deprive us of the authority to address the issues raised by Plaintiffs' appeal. *See Dafford v. JP Steakhouse LLC*, __ N.C. App __, __ n.3, 709 S.E.2d 402, 407 n.3 (2011).

## II. Legal Analysis

### A. Standard of Review

"The standard of review of an order granting a [motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6)] is whether the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true. On a motion to dismiss, the complaint's material factual allegations are taken as true. Dismissal is proper 'when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.' " *Burgin v. Owen*, 181 N.C. App. 511, 512, 640 S.E.2d 427, 428-29 (citing *Country Club of Johnston Cty., Inc. v. U.S. Fidelity & Guar. Co.*, 150 N.C. App. 231, 238, 563 S.E.2d 269, 274 (2002), and *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 56, 554 S.E.2d 840, 844 (2001), and quoting *Wood v. Guilford Cty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002)), *disc. review denied*, 361 N.C. 425, 647 S.E.2d 98 (2007), *cert. denied*, 361 N.C. 690, 652 S.E.2d 257 (2007). On appeal from an order granting a motion to dismiss for failure to state a claim, this Court "conducts a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Page v. Lexington Ins. Co.*, 177 N.C. App. 246, 248, 628 S.E.2d 427, 428 (2006) (citation omitted).

"A statute of limitations defense may properly be asserted in a Rule 12(b)(6) motion to dismiss if it appears on the face of the complaint that such a statute bars the claim. Once a defendant raises a statute of limitations defense, the burden of showing that the action was instituted within the prescribed period is on the plaintiff. A plaintiff sustains this burden by showing that the relevant statute of limitations has not expired." *Horton v. Carolina Medicorp, Inc.*, 344 N.C. 133, 136, 472 S.E.2d 778, 780 (1996) (citing *Hargett v. Holland*, 337 N.C. 651, 653, 447 S.E.2d 784, 786 (1994), *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985), and *Little v. Rose*, 285 N.C. 724, 727, 208 S.E.2d 666, 668 (1974)). We will now apply this standard of review to evaluate Plaintiffs' challenges to the trial court's order.

### B. Scope of Issues to be Resolved on Appeal

The dispositive issues presented by this appeal are whether Plaintiffs' express trust claim was barred by the statute of limitations and whether Plaintiff sufficiently stated a claim for the imposition of a

constructive or resulting trust. In order to make the first of these two determinations, we are required to decide whether Plaintiffs' complaint stated a valid claim for breach of an express trust or whether, on the other hand, Plaintiffs' complaint merely alleged a breach of contract claim. Although Plaintiffs suggest that the extent to which the 6 September 2005 agreement created a trust was not properly before the trial court and is not properly before us, we cannot agree with this contention.

[2] At the hearing held with respect to their dismissal motion, Defendants argued that "the factual theory upon which the complaint is based, its only factual theory is breach of a contract," and that the "three-year statute of limitations bars any contract claims." In addition, Defendants argued that Plaintiffs had failed to state a valid claim for breach of an express trust, that Defendants had not acted as the settlors with respect to any trust, and that "the law is very clear that you can't have a trust unless . . . the settlor has parted with something to someone as trustee." Finally, Defendants argued that the property in question was not subject to the imposition of a constructive trust or a resulting trust and that, "as far as the claims in issue, express trust, resulting trust, and constructive trust . . . whatever we call it, it's a suit on a contract and a three-year statute [of limitations.]" In response, Plaintiffs argued that Defendants' assertion that they had failed to state a claim for breach of express trust should be ignored, stating that:

> [PLAINTIFFS' COUNSEL]: . . . [T]he Riches filed a Rule 12(b)(6) motion to dismiss. And that was solely on this ground and this ground only. They say the action is barred by the three-year statute of limitations set forth in N.C. [Gen. Stat. §] 1-15 and 1-52. That's the sole ground of their motion under [N.C. Gen. Stat. §§ 1A,] Rule 12(b)(6). So we object to any argument that we have not properly stated claims for resulting trust, constructive trust or on -
>
> THE COURT: In my discretion, I'm going to let him argue that on his 12(b)(6) motion. And he's already argued it.
>
> . . . .
>
> [PLAINTIFFS' COUNSEL]: I would like to object.
>
> THE COURT: [You] didn't object while he was arguing . . . And in my discretion, I'm going to let him argue, and have let him.

Similarly, Plaintiffs suggest in their brief that our review of the trial court's order should be limited to a determination of the date upon which Plaintiffs' claim for breach of express trust accrued, an argument which, if accepted, would require us to overlook the more fundamental issue of whether any sort of trust existed in the first place. In support of this contention, Plaintiffs assert, consistently with the position that they took before the trial court, that Defendants' dismissal motion "was based solely upon their contention that all of the Plaintiffs' claims were barred by the applicable statute of limitations," that "[n]o other ground for dismissal was asserted," that "[t]he parties agree that the three-year statute of limitations applies to Plaintiffs' cause of action to enforce an express trust," but that "the parties differ on when the cause of action for breach of the express trust accrued." We do not find this argument persuasive.

After carefully reviewing the record and the briefs, we conclude that the fundamental dispute between the parties with respect to the validity of Plaintiffs' express trust claim centers on whether the 6 September 2005 agreement served to create a trust, rather than the date upon which any cause of action which Plaintiffs were entitled to assert under the alleged trust accrued. In essence, the reason that Defendants argued that Plaintiffs' breach of express trust claim was time-barred was that Plaintiffs had not really asserted a breach of express trust claim at all. In view of the fact that the trial court expressly allowed this issue to be debated in the court below and the fact that this issue appears to be at the core of the controversy before us in this case, we conclude that the question of whether Plaintiffs' complaint states a claim for breach of an express trust is properly before us and that we should address this issue in the course of reviewing Plaintiffs' challenges to the trial court's order.

## C. Breach of Express Trust

[3] " 'An express trust has been defined as a fiduciary relationship with respect to property, subjecting the person by whom the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it. . . . To constitute this relationship there must be a transfer of the title by the donor or settlor for the benefit of another. The gift must be executed rather than executory upon a contingency.' " *Bland v. Branch Banking & Tr. Co.*, 143 N.C. App. 282, 287, 547 S.E.2d 62, 66 (2001) (quoting *Wescott v. Bank*, 227 N.C. 39, 42, 40 S.E.2d 461, 462-63 (1946) (internal citation omitted). Thus, "[b]y definition, the creation of a trust must involve a conveyance of property, and before property can

be said to be held in trust by the trustee, the trustee must have legal title[.]" *In re Estate of Washburn*, 158 N.C. App. 457, 461, 581 S.E.2d 148, 151 (2003) (internal citations omitted). In other words, creation of an express trust "presupposes that [the settlor] has control of the subject matter of the trust which he desires to create, and contributes it by conveyance of the land with that intent[.]" *Taylor v. Addington*, 222 N.C. 393, 397, 23 S.E.2d 318, 321 (1942). For that reason, "property which the settlor cannot transfer cannot be held in trust, and where a settlor has no legal authority to convey legal title to property, putting said property into an irrevocable trust is *ultra vires* and the ostensible trust created thereby is consequently void *ab initio*." 76 Am Jur 2d, *Trusts* § 41. As a result, "an interest which has not come into existence or an expectation or hope of receiving property in the future cannot be held in trust." *The Infinity Group, LLC v. Lucas (In re Lucas)*, 477 B.R. 236, 244 (Bankr. M.D. Ala. 2012). In summary:

> By definition, the creation of a trust must involve a conveyance of property. For a settlor to have the power to create a trust, he must own a transferable property interest or have a power of disposition over such property interest[.] . . . Property which the settlor cannot transfer cannot be held in trust. . . . [A] "person lacking capacity to make an ordinary transfer of property has no capacity to create an *inter vivos* trust."

*Jewish Community Ass'n v. Community Bank*, 6 P.3d 1264, 1266-1267 (Wyo. 2000) (citing *Restatement of Trusts 2d* § 79, and quoting *Hilbert v. Benson*, 917 P.2d 1152, 1156 (Wyo. 1996)).

The 6 September 2005 agreement provided that, in the event that Defendants were to obtain ownership of "Tract II" at some point in the future, they would, at that time, grant Plaintiffs an easement applicable to that tract of property. At the time that the parties executed the 6 September 2005 agreement, Defendants had no interest in the property that was to be the subject of the easement. In light of that fact, Defendants had no power to transfer any right of any nature in Tract II at the time the 6 September 2005 agreement was signed. As a result of the fact that Defendants had no authority to transfer, and did not transfer, the *res* of the alleged trust at the time that the express trust in question was allegedly created, we conclude that the 6 September 2005 agreement did not result in the creation of an express trust, limiting any claims that Plaintiffs were entitled to assert in reliance on that agreement to a garden-variety breach of contract claim.

As Plaintiffs appear to concede, the statute of limitations applicable to breach of contract claims of the nature actually alleged in Plaintiffs' complaint had expired by the time that their complaint was filed. "In general, an action for breach of contract must be brought within three years from the time of the accrual of the cause of action. [N.C. Gen. Stat. §] 1-52(1)[.] A cause of action generally accrues and the statute of limitations begins to run as soon as the right to institute and maintain a suit arises." *Penley v. Penley*, 314 N.C. 1, 19-20, 332 S.E.2d 51, 62 (1985) (citing *Reidsville v. Burton*, 269 N.C. 206, 152 S.E. 2d 147 (1967) (other citation omitted). Plaintiffs' complaint clearly indicates that Defendants obtained their right to see the creation of an easement in their favor applicable to Tract II on or about 12 February 2008, when Judge Webb ordered that the deed from Plaintiffs to Defendants be reformed to include all of Lot 8. However, Plaintiffs did not attempt to enforce any rights that they might have possessed under the 6 September 2005 agreement until 29 December 2011, almost four years after any claim that Plaintiffs might have been able to assert for breach of contract accrued. As a result, Plaintiffs' contract-based claim is clearly barred by the applicable statute of limitations.

In seeking to persuade us that their express trust claim against Defendants was not subject to dismissal, Plaintiffs argue that they adequately stated a claim for breach of an express trust. However, Plaintiffs have neither demonstrated that they are entitled to assert that an express trust can be created in the absence of a transfer of property nor even mentioned this deficiency in attempting to persuade us of the merits of their express trust claim. Instead, Plaintiffs simply "contend [that] the cause of action for breach of the express trust did not accrue until 23 November 2011, when all the Defendants repudiated and disavowed the trust agreement, and otherwise refused to record the Deed of Easement." In light of the fact that the 6 September 2005 agreement constituted a simple contract rather than an express trust, any claim that Plaintiffs might have been able to assert against Defendants under that agreement accrued on the date upon which Judge Webb determined that Defendants owned all of Lot 8 rather than on the date upon which Defendants expressly "repudiated" their obligations under the 6 September 2005 agreement. As a result, the trial court did not err by dismissing Plaintiffs' complaint for failure to state a claim for relief pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6).

### D. Constructive or Resulting Trust

[4] Secondly, Plaintiffs argue that the trial court erroneously dismissed their request for the imposition of a constructive or resulting trust

entitling them to an easement applicable to Tract II. Once again, we fail to find Plaintiffs' argument persuasive.

The circumstances in which the imposition of a constructive or resulting trust is appropriate are well-established.

> "A constructive trust is a duty, or relationship, imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust. . . . [A] constructive trust is a fiction of equity, brought into operation to prevent unjust enrichment through the breach of some duty or other wrongdoing. . . . [T]here is a common, indispensable element in the many types of situations out of which a constructive trust is deemed to arise. This common element is some fraud, breach of duty or other wrongdoing by the holder of the property[.]

*Cury v. Mitchell*, 202 N.C. App. 558, 560-61, 688 S.E.2d 825, 827 (quoting *Roper v. Edwards*, 323 N.C. 461, 464, 373 S.E.2d 423, 424-25 (1988) (internal quotations and citations omitted), *disc. review denied*, 364 N.C. 434, 702 S.E.2d 300 (2010). Similarly,

> "[a] resulting trust arises 'when a person becomes invested with the title to real property under circumstances which in equity obligate him to hold the title and to exercise his ownership for the benefit of another. . . . A trust of this sort does not arise from or depend upon any sort of agreement between the parties. It results from the fact that one man's money has been invested in land and the conveyance taken in the name of another.' "
>
> The classic example of a resulting trust is the purchase-money resulting trust. In such a situation, when one person furnishes the consideration to pay for the land, title to which is taken in the name of another, a resulting trust commensurate with his interest arises in favor of the one furnishing the consideration. The general rule is that the trust is created, if at all, in the same transaction in which the legal title passes, and by virtue of the consideration advanced before or at the same time the legal title passes.

*Cury,* 202 N.C. App. at 562-63, 688 S.E.2d at 827 (quoting *Patterson v. Strickland,* 133 N.C. App. 510, 519, 515 S.E.2d 915, 920 (1999) (quoting *Mims v. Mims,* 305 N.C. 41, 46, 286 S.E.2d 779, 783 (1982) (internal citation omitted), and *Cline v. Cline,* 297 N.C. 336, 344, 255 S.E.2d 399, 404-05 (1979)). The allegations set out in Plaintiffs' complaint fail to support the imposition of either a constructive or a resulting trust.

Although Plaintiffs assert that Defendants "acquired title to the balance of the original Moss Creek lot under circumstances which in equity obligate [Defendants] to hold title and exercise ownership for the benefit of [Plaintiffs], consistent with the Deed of Easement" and that "[e]quity should raise a resulting trust by reason of such circumstances," Plaintiffs have failed to allege facts that might support such a conclusion. Instead, the factual allegations set out in Plaintiffs' complaint establish that: (1) Plaintiff purchased an additional lot in the Moss Creek development and subsequently divided it, adding part of the new lot to their original home site and selling the remainder to Defendants; (2) Plaintiffs' actions violated the restrictive covenants applicable to Moss Creek, which explicitly preclude the subdivision of any lots in that development; and (3), as a remedy for Plaintiffs' violation of the Moss Creek restrictive covenants, the documents effectuating and evidencing these transactions were declared null and void and the deed in which Plaintiffs had granted Defendants a portion of the original lot was reformed so that Plaintiffs owned Lot 6 and Defendants owned Lot 8 as originally delineated. As a result, the factual allegations set out in Plaintiffs' complaint do not suffice to establish that Defendants obtained possession of Tract II as the result of any fraud, wrongdoing,[4] or other circumstance that might support the imposition of a constructive or resulting trust.

In attempting to persuade us to reach a different conclusion, Plaintiffs cite *Wilson v. Development Co.,* 276 N.C. 198, 211, 171 S.E.2d

---

4. In their brief, Plaintiffs speculate that the "Moss Creek Homeowners Association would have never agreed to allow [Defendants] to obtain title to all of old Lot 8 in the Moss Creek Litigation had the Moss Creek Homeowners Association been informed of the Deed of Easement," that "[t]he existence of the Agreement and the Deed of Easement between [Plaintiffs] and [Defendants] was withheld in the Moss Creek Litigation settlement discussions," and that, "[b]y withholding such information, [Defendants] were able to acquire property for which they paid no consideration." However, Plaintiffs cite no allegations in their complaint which support these conclusory assertions. In addition, the trial court, rather than the homeowners' association, ordered the reformation of the deed to Lot 8. As a result, the additional arguments advanced by Plaintiffs predicated on the theory that, had the parties' agreement been disclosed during the course of the *Moss Creek I* litigation, the outcome in that proceeding would have been different do not suffice to justify a reversal of the trial court's order.

873, 882 (1970), for the general proposition that a constructive trust may be the "proper remedy to prevent unjust enrichment." However, nothing in *Wilson* in any way suggests that the facts alleged in Plaintiffs' complaint rise to the level necessary to support the imposition of a constructive trust. In addition, Plaintiffs cite *Guy v. Guy*, 104 N.C. App. 753, 757-58, 411 S.E.2d 403, 405-06 (1991), and *Mims*, 305 N.C. at 59, 286 S.E.2d at 791 (1982), in support of their claims for the imposition of a constructive or resulting trust. However, neither *Guy* (holding that a complaint, in which the plaintiff alleged that he had conveyed certain real property to his son in exchange for a promise to reconvey the property after the plaintiff repaid a bank loan and that the defendant had refused to honor their bargain after the plaintiff had repaid the loan, stated a claim for the imposition of a constructive trust), nor *Mims* (holding that, despite the presumption that transfers among spouses are gratuitous, the plaintiff stated a claim for the imposition of a resulting trust where he "supplied the entire purchase price for the property from money he received from his father and grandfather," "at all times intended for the property to be his alone," so "advised the defendant at and before the closing," and "acquiesced ian placing the title in both his and defendant's names only because he was advised by his real estate agent that North Carolina law so required"), appear to have any significant bearing on the proper resolution of this case in light of Plaintiffs' failure to articulate any way in which the facts at issue here are analogous to those at issue in *Guy* and *Mims*. As a result, we conclude that the trial court did not err by dismissing Plaintiffs' request for the imposition of a constructive or resulting trust on Tract II.

### III.  Conclusion

Thus, for the reasons discussed above, we conclude that the trial court did not err by granting Defendants' dismissal motion. As a result, the trial court's order should be, and hereby is, affirmed.

AFFIRMED.

Chief Judge MARTIN and Judge McCULLOUGH concur.