Castillo v. RRD Fin., LLC, 2025 NCBC 53.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV007822-590

JOSE A. MARRUFO CASTILLO
and JORGE ABRAHAM ALVAREZ
MARRUFO,

        Plaintiffs,

v.

RRD FINANCIAL, LLC; DAVID
ALGOOD; and RYAN
ESKANDARI,

        Defendants.

**ORDER AND OPINION ON MOTIONS
FOR JUDGMENT ON THE
PLEADINGS**

1.     This matter is before the Court on Defendants' partial motions for judgment on the pleadings, both of which seek judgment on the pleadings as to Plaintiffs' Fourth Claim for Relief for purported violations of Chapter 75 of the North Carolina General Statutes and Seventh Claim for Relief for negligent misrepresentation.

2.     Defendants have filed answers to Plaintiffs' complaint, (ECF Nos. 11, 12), and the pleadings are therefore closed.

3.     Defendants RRD Financial, LLC and Ryan Eskandari filed their motion for judgment on the pleadings on 2 June 2025, (ECF No. 15), and defendant David Algood filed his motion four days later, (ECF No. 23).

4.     Having reviewed and considered the motions, the briefs, and the applicable pleadings, the Court determines that the motion filed by defendants RRD and Eskandari should be **GRANTED** and the motion filed by defendant Algood should be **DENIED** at this time.

*Fox Rothschild LLP, by Kip D. Nelson and Camryn Rohr, for Plaintiffs
Jose A. Marrufo Castillo and Jorge Abraham Alvarez Marrufo.*

*Lord & Lindley, PLLC, by Harrison A. Lord and Trey Lindley, for Defendants RRD Financial, LLC and Ryan Eskandari.*

*Knox, Brotherton, Knox & Godfrey, by Allen C. Brotherton and J. Gray Brotherton, for Defendant David Algood.*

Houston, Judge.

## I.     BACKGROUND

5.     The Court does not make findings of fact on motions for judgment on the pleadings. The Court does, however, summarize and recite certain of the relevant, well-pleaded allegations of the complaint, which are taken as true for purposes of the motions.

6.     RRD operates and finances a network of used car dealerships around the United States. Between 2019 and 2022, it employed plaintiff Jose A. Marrufo Castillo as the general manager of two of its dealerships, having first hired him to work as a sales associate in 2018. Satisfied with Marrufo Castillo's performance, RRD also hired his cousin, plaintiff Jorge Abraham Alvarez Marrufo. (Compl. ¶¶ 9, 12, 15–18, ECF No. 3).

7.     In September 2022, after certain management disagreements, Marrufo Castillo resigned from his position as general manager, and Alvarez Marrufo conveyed his intent to do the same. (Compl. ¶ 21).

8.    After Defendants[1] asked both men to reconsider, Marrufo Castillo agreed to remain with RRD but only if he became a "partner" in the company—a condition to which he and Defendants agreed. (Compl. ¶¶ 23–24).

9.    In December 2022, the parties ultimately negotiated and executed an "operating agreement" to document their purported partnership or, alternatively, joint venture. In the course of negotiating that agreement, Mohammed Reza Eskandari (defendant Ryan Eskandari's brother) and defendant David Algood, a member and manager of RRD, told Plaintiffs that Plaintiffs' compensation structure would consist of a base salary and other compensation, including the profits of any dealerships Plaintiffs operated. Algood also represented that Defendants would assist Plaintiffs in opening and operating dealerships in Columbia, South Carolina "and elsewhere" by providing "working capital and other assistance." Despite these representations, Plaintiffs conclusorily assert that Defendants never intended to provide the working capital and other assistance as promised. (Compl. ¶¶ 22–25, 82–85).

10.    After the agreement was reached, new issues soon arose. For example, according to Plaintiffs, Defendants limited Plaintiffs' access to corporate records and "impeded Plaintiffs' ability to open new facilities pursuant to the" agreement between the parties. Nonetheless, Plaintiffs insist that they continued to perform under the operating agreement, opening one dealership in Greer, South Carolina in early 2023 and another in Columbia, South Carolina about a year later—on both occasions with

---

[1] Plaintiffs largely fail to distinguish between the individual defendants and the entity defendant in their complaint.

funding from RRD. The two locations generated a substantial sales portfolio of approximately $14 million under Plaintiffs' management. (Compl. ¶¶ 26–29).

11. Around June 2024, defendant Eskandari and his brother Mohammed requested that Plaintiffs review the financial records of RRD's dealership in Houston, Texas for signs of mismanagement by Algood. Plaintiffs agreed to do so and ultimately concluded that Algood had, in fact, mismanaged the dealership, bringing to RRD's attention a number of alleged "abnormalities" in the location's financial records. (Compl. ¶¶ 30–32).

12. According to Plaintiffs, at Algood's behest, RRD then promptly terminated Plaintiffs' access to RRD's corporate records, stopped "providing support to Plaintiffs' operation of the Columbia location," and began withholding payments owed to Plaintiffs. Algood also accused Plaintiffs of misappropriating funds from RRD. To further exclude Plaintiffs from the business and its operations, Defendants seized a computer containing Plaintiffs' only copy of the parties' "operating agreement." (Compl. ¶¶ 33–36, 95).

13. Plaintiffs also assert that Algood "wielded the threat of a lawsuit to demand" that Alvarez Marrufo sign a release of Plaintiffs' rights to the Greer Auto Finance Center, though Plaintiffs do not detail the threatened basis (or lack of basis) for the lawsuit or plead facts indicating that the threat was wrongful or baseless. (Compl. ¶¶ 34, 36).

14. On 13 February 2025, Plaintiffs brought suit against Defendants, suing for breach of the operating agreement, breach of fiduciary duty, accounting, unfair or

deceptive trade practices under N.C. Gen. Stat. § 75-1.1, unjust enrichment, fraudulent misrepresentation, negligent misrepresentation, and defamation. RRD and Eskandari, jointly represented by counsel, filed their answer in April 2025, (ECF No. 12), as did Algood, who is separately represented, (ECF No. 11).

15. In early June 2025, RRD, Eskandari, and Algood moved for judgment on the pleadings as to Plaintiffs' Fourth Claim for Relief for purported violations of Chapter 75 of the North Carolina General Statutes and Seventh Claim for Relief for negligent misrepresentation.

16. While RRD and Eskandari submitted substantive briefing in support of their motion with both an opening brief and a reply brief in support, (ECF Nos. 16, 29), Algood failed to do so, instead submitting an opening "brief" that reads, in its entirety other than the caption, signature block, and certificate of service, as follows:

> DEFENDANT DAVID ALGOOD, by and through undersigned counsel and in support of his Motion for Judgment on the Pleadings, states as follows:
>
> Defendant Algood *hereby incorporates by reference all factual recitations, standards of review, and substantive arguments set forth in the Brief in Support of Motion for Judgment on the Pleadings of Defendants RRD Financial, LLC and Ryan Eskandari* ("RRD Brief"), filed in this matter on June 2, 2025. (ECF No. 16). Said incorporations apply equally to Defendant Algood, and, for the same reasons cited therein, Defendant Algood is entitled to judgment on the pleadings as to Plaintiffs' Fourth and Seventh Claims for Relief. *Id.*
>
> Further, dismissal for failure to state a claim upon which relief can be granted is proper where either "the complaint on its face reveals the absence of facts sufficient to make a good claim, or the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Bissette v. Harrod*, 226 N.C. App. 1, 7, 738 S.E.2d 792, 797 (2013). As detailed in the RRD Brief, Plaintiffs'

Fourth Claim for Relief is based on breaches of a partnership agreement, the existence of which precludes a finding that the intra-business activities were in and affecting commerce. (ECF No. 16 at pp. 3-6). Plaintiffs' Fourth Claim for Relief for unfair and deceptive business practices is thus "necessarily defeat[ed]." *Bissette*, 226 N.C. App. at 7. Finally, the Plaintiffs' failure to satisfy Rule 9(b)'s heightened pleading standard for their negligent misrepresentation claim constitutes "the absence of facts sufficient to make a good claim", and this claim is likewise subject to dismissal. *Id*.

Therefore, and *in reliance on the incorporated RRD Brief*, Defendant Algood is entitled to judgment on the pleadings as to Plaintiff's Fourth and Seventh Claims for Relief, including without limitation for failure to state a claim for which relief can be granted.

(ECF No. 24 (emphasis added)). Algood did not file and serve a reply in support of his motion.

17.    The motions are now ripe for decision, and, pursuant to Rule 7.4 of the Business Court Rules, the Court elects in its discretion to resolve the motions without a hearing.

## II.    ALGOOD'S MOTION

18.    The Court first addresses Algood's motion and his failure to comply with the Business Court Rules.

19.    Under the version of Rule 7.2 of the Business Court Rules in effect at the time the briefs on this motion were filed,[2] "[a]ll motions must be accompanied by a brief (except for those motions listed in BCR 7.10)," and "[a] motion unaccompanied

---

[2] The Business Court Rules were subsequently amended effective 2 September 2025 to streamline the text of the Rules, but the substance of the Rules (and the Court's determination) is the same with respect to the matters at issue. Indeed, amended BCR 7.1(c) expressly notes that "[t]he Court has discretion to disregard or strike a filing that does not comply with these rules." BCR 7.1(c).

by a required brief may, in the discretion of the Court, be summarily denied." BCR 7.2 ("The function of all briefs required or permitted by this rule is to define clearly the issues presented to the Court and to present the arguments and authorities upon which the parties rely in support of their respective positions. A party should therefore brief each issue and argument that the party desires the Court to rule upon and that the party intends to raise at a hearing.").

20.  The parties are expected to clearly cite in their briefs to the materials supporting their argument (including affidavits, cases, and other such support for the argument) where possible. BCR 7.5.

21.  Similarly, Rule 7.8 of the Business Court Rules expressly provides that "[a] party may not incorporate by reference arguments made in another brief or file multiple motions to circumvent [word] limits." BCR 7.8.

22.  Across the spectrum, this Court has repeatedly made clear that the Business Court Rules preclude a party from adopting or incorporating by reference the party's earlier-filed briefing or briefing by another party without the Court's leave. This is not limited to situations of word-count gamesmanship and applies to any situation in which a brief is required. *See, e.g., Howard v. IOMAXIS, LLC*, 2023 NCBC LEXIS 159, at *16 n.5 (N.C. Super. Ct. Nov. 29, 2023) ("The IOMAXIS Defendants seek to incorporate their earlier Rule 12(c) motion and brief. Such a practice is contrary to BCR 7.8."); *Anderson v. Beresni*, 2022 NCBC LEXIS 125, at *1 (N.C. Super. Ct. Oct. 25, 2022) (striking brief where defendants "attempt[ed] to incorporate by reference arguments previously made by them in their brief in opposition to" a preliminary

injunction motion); *Wright v. LoRusso*, 2023 NCBC LEXIS 66, at \*3 (N.C. Super. Ct. May 4, 2023) (striking summary judgment motions and related briefing, exhibits, and other filings).

23.    Here, Algood's briefing does not comply with the Business Court Rules.

24.    First, in violation of Business Court Rule 7.8, Algood purports to incorporate by reference "all factual recitations, standards of review, and substantive arguments" in RRD and Eskandari's brief and then acknowledges that the substance of Algood's argument is made "in reliance on the incorporated RRD Brief." (ECF No. 24 at 1–2).

25.    Second, in violation of then-applicable Business Court Rules 7.2 and 7.5, the "brief" fails to clearly identify the issues or to present the arguments and authorities upon which Algood relies and fails to substantively brief each issue and argument that Algood apparently would have the Court consider. In short, while Algood's filing is captioned as a "brief," it lacks any of the substance expected and required in a brief, citing only a single case setting forth the standard for the Court's consideration of a motion for judgment on the pleadings. (ECF No. 24 at 2 (quoting *Bissette v. Harrod*, 226 N.C. App. 1, 7, 738 S.E.2d 792, 797 (2013))).

26.    Thus, Algood's filing violates the Business Court Rules, and, in its discretion, the Court determines that it is appropriate for the Court to **STRIKE** the purported brief, (ECF No. 24), and **DENY** Algood's motion for judgment on the pleadings, (ECF No. 23).[3]

---

[3] The Court endeavors to ensure efficiency for the parties and the Court in each case. While the Court could, in its discretion, permit re-briefing of the motion, *see, e.g.*, *Anderson*, 2022 NCBC LEXIS 125, at \*1, the Court declines to do so, as it would be neither efficient nor

### III. RRD AND ESKANDARI'S MOTION

27. The Court next addresses the motion for judgment on the pleadings filed by RRD and Eskandari.

28. "The purpose of . . . Rule 12(c) is to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit," and it "is appropriately employed where all the material allegations of fact are admitted in the pleadings and only questions of law remain." *DiCesare v. Charlotte-Mecklenburg Hosp. Auth.*, 376 N.C. 63, 70 (2020) (citation and internal quotation marks omitted). As with a motion to dismiss for failure to state a claim upon which relief can be granted, a trial court should grant a motion for judgment on the pleadings "when a complaint fails to allege facts sufficient to state a cause of action or pleads facts which deny the right to any relief." *Robertson v. Boyd*, 88 N.C. App. 437, 440 (1988); *see also DiCesare*, 376 N.C. at 70 (noting that judgment on the pleadings is appropriate when the movant "show[s] that 'the complaint . . . fails to allege facts sufficient to state a cause of action or admits facts which constitute a complete legal bar thereto'" (citation omitted)).

29. "The trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party. All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false." *Ragsdale v. Kennedy*, 286 N.C. 130, 137

---

economical, particularly where Algood seeks only partial judgment on the pleadings. Algood may, if appropriate, renew any applicable arguments at summary judgment if the claims are not sooner dismissed by Plaintiffs.

(1974). "Judgment on the pleadings is a summary procedure and the judgment is final." *Id.* (citation omitted).

30. The Court addresses each of Plaintiffs' claims at issue in turn.

31. **Plaintiffs' Fourth Claim for Relief—Purported Chapter 75 Violations**. Section 75-1.1 of the North Carolina General Statutes prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1. The statute broadly defines "commerce" to include "all business activities, however denominated," *id.* § 75-1.1(b),[4] but the term "business activities" reaches only "a business's regular interactions with other market participants," *White v. Thompson*, 364 N.C. 47, 51 (2010); *see also HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 594 (1991) ("'Business activities' is a term which connotes the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized.").

32. Thus, the phrase "business activities" does not include acts that relate solely to the "internal operations of a single business." *White*, 364 N.C. at 52. Accordingly, North Carolina courts have determined that otherwise unfair or deceptive conduct generally does not fall within the scope of section 75-1.1 if it occurs solely within a single partnership, joint venture, or other business enterprise. *See, e.g., id.* at 53–54; *Morris Int'l, Inc. v. Packer*, 2021 NCBC LEXIS 99, at *30–31 (N.C. Super. Ct. Nov. 2, 2021); *see also Jones v. Shoji*, 336 N.C. 581, 585 (1994) ("A joint venture is in the

---

[4] The statute excepts from this definition "professional services rendered by a member of a learned profession." N.C. Gen. Stat. § 75-1.1(b).

nature of a kind of partnership, and although a partnership and a joint venture are distinct relationships, they are governed by substantially the same rules." (citation and internal punctuation omitted)). This is true even when the market participant consists of multiple business entities; "[t]he 'fact that separate entities comprise [a] single market participant does not' make external what is otherwise internal to the business." *LLG-NRMH, LLC v. N. Riverfront Marina & Hotel, LLLP*, 2018 NCBC LEXIS 105, at *12 (N.C. Super. Ct. Oct. 9, 2018) (second alteration in original) (quoting *Polyquest, Inc. v. Vestar Corp, LLC*, 2014 U.S. Dist. LEXIS 14905, at *35 (E.D.N.C. Feb. 6, 2014)).

33. In determining whether such an internal dispute is before the Court, the relevant inquiry is whether the alleged unfair or deceptive conduct "inheres in the relationship between" plaintiff and defendant as partners, co-owners, managers, or employees of a single business enterprise or otherwise as actors internal to the business enterprise. *McFee v. Presley*, 2022 NCBC LEXIS 74, at *17 (N.C. Super. Ct. July 11, 2022) (citation omitted) (collecting cases); *see also Potts v. KEL, LLC*, 2018 NCBC LEXIS 24, at *15 (N.C. Super. Ct. Mar. 27, 2018); *Poluka v. Willette*, 2021 NCBC LEXIS 105, at *16–17 (N.C. Super. Ct. Dec. 2, 2021).

34. If so, the conduct at issue is not in or affecting commerce and thus not within the scope of section 75-1.1. *See White*, 364 N.C. at 54 (determining that section 75-1.1 did not encompass the defendant's conduct even though that conduct "reduc[ed] competition and potentially affect[ed] prices"); *see also McFee*, 2022 NCBC LEXIS 74,

at \*17; *Potts*, 2018 NCBC LEXIS 24, at \*15; *Poluka*, 2021 NCBC LEXIS 105, at \*16–17.

35.    Here, accepting Plaintiffs' factual, non-conclusory allegations as true, the pleadings establish that Plaintiffs and the individual Defendants were members of a single business enterprise—the entity Defendant—and that the dispute at issue is ultimately a dispute internal to that singular business enterprise and the formation of that enterprise.

36.    Plaintiffs expressly allege that they engaged in a joint business enterprise with Defendants either as partners or, alternatively, as participants in a joint venture and that the purpose of the enterprise was to open and operate used car dealerships for profit. (Compl. ¶¶ 25, 63, 70). The Greer dealership operated as "Auto Finance Center," the same name under which RRD operated dealerships around the country, and was under Plaintiffs' management pursuant to the parties' purported partnership agreement. (Compl. ¶¶ 10, 28–29). Further, Plaintiffs assert that RRD financed the opening of the Columbia dealership and continued funding it for a time after it opened. (Compl. ¶¶ 28, 33).

37.    According to Plaintiffs, RRD had sole "control of the corporate documents necessary to open new dealerships and operate existing dealerships" (i.e., the very dealerships around which this dispute centers in large part) and "the sole power to ensure accuracy in the accounting statements of the various dealerships," including the Greer and Columbia dealerships that Plaintiffs were operating. (Compl. ¶ 64).

38. Defendants also were allegedly entitled to a share of the profits from the dealerships that Plaintiffs managed, (Compl. ¶ 75), and Plaintiffs assert that their business activities inured to Defendants' benefit, (Compl. ¶ 77).

39. As alleged in the complaint, RRD's and Eskandari's purported unfair or deceptive conduct occurred between the parties solely with respect to their involvement in the automobile-focused partnership or joint venture. The section 75-1.1 claim arises in significant part from Defendants' control over "corporate documents." For example, Defendants allegedly restricted Plaintiffs' access to documents and "conceal[ed] information regarding financial status and management of the other RRD dealerships." (Compl. ¶ 66). In other words, Plaintiffs complain of Defendants' failure to grant them access to records to which Plaintiffs, as members of the same enterprise, contend they were entitled.

40. Plaintiffs' other allegations also concern conduct arising from the shared enterprise. After Plaintiffs reported that Algood had mismanaged the Houston dealership, Defendants allegedly "seiz[ed] Plaintiffs' work computer" and froze "Plaintiffs out of the joint venture." (Compl. ¶ 67). Algood also allegedly told "employees of Auto Finance Center and of RRD" that Plaintiffs had "embezzled funds from RRD." (*See* Compl. ¶¶ 95, 98). Plaintiffs complain of no conduct involving interactions between separate businesses or between businesses and consumers, *see White*, 364 N.C. at 52–53 (noting that the purpose of section 75-1.1 is to regulate "unfair and deceptive conduct in interactions between market participants, both

businesses and consumers").[5] Even to the extent Plaintiffs allege that they were misled into the parties' arrangement, the factual allegations simply do not rise to the level necessary to show conduct in or affecting commerce or otherwise subject to Chapter 75 regulation.

41.     Further, though Plaintiffs assert a defamation claim against Algood and a valid claim for defamation can support a claim for unfair or deceptive trade practices, *see, e.g.*, *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 35–36 (2002), Plaintiffs plead no facts and make no argument suggesting that the alleged defamation would constitute unfair or deceptive practices or acts under the circumstances of this case, nor do Plaintiffs otherwise make any attempt to link the defamation and Chapter 75 claims. (*See* Compl. ¶¶ 62–73, 94–100). Moreover, the alleged defamatory statement by Algood was purportedly made in the context of a discussion regarding internal documents and financial "abnormalities" and in the presence of employees of the company—not customers or other third parties who might otherwise be engaged in commerce. (Compl. ¶¶ 95, 98).

42.     Accordingly, Defendants' alleged conduct falls outside the scope of section 75-1.1, and the Court will grant the motion for judgment on the pleadings as to Plaintiffs' claim for purported violations of Chapter 75 against Defendants.

---

[5] In their brief opposing RRD and Eskandari's motion, Plaintiffs contend that "[i]f each car dealership is a distinct joint venture, then this dispute by definition cannot involve a single entity." (ECF No. 27 at 6–7). The complaint, however, alleges that the parties created a single partnership or joint venture. (*See, e.g.*, Compl. ¶¶ 25, 63). Further, if each dealership were a distinct venture, the unfair or deceptive nature of Defendants' conduct would still be internal (to each joint venture or enterprise) rather than arising from any interaction between the dealerships and others as market participants.

43. **Plaintiffs' Seventh Claim for Relief—Purported Negligent Misrepresentation**. To state a claim for negligent misrepresentation, a plaintiff must allege that he "justifiably relie[d] to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206 (1988); *Sullivan v. Mebane Packaging Grp., Inc.*, 158 N.C. App. 19, 33 (2003). The complaint must allege negligent misrepresentation with particularity by setting forth the "time, place, speaker, [and] specific contents of the alleged misrepresentation." *Value Health Sols., Inc. v. Pharm. Rsch. Assocs., Inc.*, 385 N.C. 250, 265–66 (2023).

44. Defendants argue that Plaintiffs have failed to plead their claim for negligent misrepresentation with the requisite particularity. The Court agrees.

45. First, there are no individualized, direct allegations of misrepresentation as to Eskandari in any capacity. Without facts suggesting that Eskandari (rather than his brother Mohammed) made false statements to Plaintiff, the claim necessarily fails as to Eskandari. *See Ragsdale*, 286 N.C. at 138 (noting that the first element of a fraud claim is a "[f]alse representation or concealment of a material fact"); *Sullivan*, 158 N.C. App. at 33 (noting that negligent misrepresentation requires a showing that the claimant relied "on information prepared without reasonable care"); (*see generally* Compl.).

46. Second, as to the allegations actually asserted, Plaintiffs allege that "Defendants had a duty to exercise reasonable care in preparing the financial information regarding their business activities" but "did not exercise reasonable care

in preparing the financial information communicated to Plaintiffs in the course of negotiating the Partnership Agreement." (Compl. ¶¶ 90–91). That is all—Plaintiffs do not specify the purported "financial information" at issue, who misrepresented it, or when or where it was misrepresented. In fact, no other part of the complaint alleges that Defendants misrepresented "financial information" concerning their business activities while the parties were negotiating their agreement. (*See generally* Compl.).

47. In their briefing, Plaintiffs attempt to supplement their claim by arguing that Plaintiffs were "presented with false statements regarding profits, accounts in the portfolio, and insurance payments" at unspecified times. (ECF No. 27 at 12–13). In making this argument, however, Plaintiffs cite to paragraphs 83 and 84 of their complaint, which allege that, in December 2022, Algood and non-party Mohammed Eskandari affirmatively misrepresented the amounts of Plaintiffs' future compensation under the purported partnership agreement and that "[t]hese representations were false when made, and Defendants had no intention to pay Plaintiffs what they were promised." (Compl. ¶¶ 82–83).

48. Defendants further allege that "Algood represented to Plaintiffs that Defendants would provide working capital and other assistance to Plaintiffs for the opening and operation of car dealerships in Columbia, South Carolina and elsewhere, for shared profit" and that, as above, Defendants did not intend to fulfill that promise. (Compl. ¶¶ 84–85).

49. These purportedly intentional misrepresentations regarding compensation and financial support, however, are promises or statements of intent and cannot form

the basis of a *negligent* misrepresentation claim. *See Trana Discovery, Inc. v. S. Rsch. Inst.*, 915 F.3d 249, 254 (4th Cir. 2019) ("A promise is a statement of intention, not fact, meaning it is false only if the promisor never honestly intended to carry it out. It can be intentionally false, but not negligently so." (citations omitted)); *Hills Mach. Co. v. Pea Creek Mine, LLC*, 265 N.C. App. 408, 420 (2019) ("The general rule is that an unfulfilled promise cannot be the basis for an action for fraud unless the promise is made with no intention to carry it out." (quoting *Nw. Bank v. Rash*, 74 N.C. App. 101, 105 (1985))).

50. Further, consistent with the lack of pleading detail throughout the complaint, Plaintiffs also assert that Defendants had the "*opportunity* to make representations regarding" certain matters to Plaintiff, though there are no non-conclusory, factual allegations that Defendants took advantage of this alleged "opportunity." (Compl. ¶ 65 (emphasis added)). Without factual allegations demonstrating that Plaintiffs "justifiably relie[d] to [their] detriment on information prepared without reasonable care by [RRD and Eskandari]" and that RRD and Eskandari owed a duty of care not to make such statements, this claim fails as to RRD and Eskandari. *See Raritan*, 322 N.C. at 206.

51. Accordingly, the Court will grant RRD and Eskandari's motion for judgment on the pleadings as to Plaintiffs' claim for negligent misrepresentation.

## IV.  CONCLUSION

52. Therefore, the Court **GRANTS** the partial motion for judgment on the pleadings filed by defendants RRD and Eskandari and enters judgment on the

pleadings in favor of RRD and Eskandari with respect to Plaintiffs' Fourth Claim for Relief for purported violations of Chapter 75 of the North Carolina General Statutes and Seventh Claim for Relief for purported negligent misrepresentation.

53.     The Court **STRIKES** the purported "brief" filed by defendant Algood in support of his partial motion for judgment on the pleadings, (ECF No. 24).

54.     The Court **DENIES** the partial motion for judgment on the pleadings filed by defendant Algood, without prejudice to Algood's ability to renew his arguments at a later stage of the case.

**SO ORDERED**, this 3rd day of September 2025.

/s/ Matthew T. Houston

Matthew T. Houston
Special Superior Court Judge
 for Complex Business Cases